H3FKHAMC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          15 CR 854 (LTS)

5    ALI HAMILTON, JEAN BAPTISTE
     LESSAGE, DAVID BUCKHANON,
6    JAMMAL LINDO, JALEEL BARON,
     KYLE MULLINGS,
7
               Defendants.
8
     ------------------------------x
9
                                        New York, N.Y.
10                                      March 15, 2017
                                        4:15 p.m.
11

12   Before:

13                   HON. LAURA TAYLOR SWAIN,

14                                        District Judge

15

16

17

18

19

20

21

22

23

24

25

H3FKHAMC

1

                              APPEARANCES
2

3   JOON H. KIM,
        Acting United States Attorney for the
4       Southern District of New York
    SCOTT HARTMAN
5   JASON M. SWERGOLD
    JESSICA LONERGAN
6       Assistant United States Attorneys

7   SANFORD N. TALKIN
        Attorney for Defendant Hamilton
8
    MATTHEW DANIEL MYERS
9       Attorney for Defendant Lessage

10  ELIZABETH E. MACEDONIO
        Attorney for Defendant Buckhanon
11
    JAMES E. NEUMAN
12      Attorney for Defendant Lindo

13  ELIZABETH E. MACEDONIO (Standing in for Mark. S. DeMarco)
        Attorney for Defendant Baron
14
    SANFORD N. TALKIN (Standing in Stewart L. Orden)
15      Attorney for Defendant Mullings

16

17

18

19

20

21

22

23

24

25

H3FKHAMC

1          THE DEPUTY CLERK:  This case is United States of

2    America versus Hamilton, et al.

3          THE COURT:  Counsel, would you state your appearances,

4    please.

5          MR. SWERGOLD:  Good afternoon, your Honor.  Jason

6    Swergold, Jessica Lonergan, and Scott Hartman, for the

7    government.

8          MR. HARTMAN:  Good afternoon, Judge.

9          MS. LONERGAN:  Good afternoon.

10          THE COURT:  Good afternoon, Mr. Swergold,

11    Ms. Lonergan, and Mr. Hartman.

12          MR. TALKIN:  Good afternoon, your Honor.  Sam Talkin,

13    for Mr. Hamilton, who is the only person in the dark shirt in

14    the jury box.

15          I am also standing in for Mr. Orden, for Mr. Mullings,

16    who is the individual closest to you in the jury box.

17          THE COURT:  Good afternoon, Mr. Mullings,

18    Mr. Hamilton.  Good afternoon, Mr. Talkin.

19          MR. MYERS:  Matthew Myers, for -- it says Jean

20    Baptiste Lessage, defendant two on the indictment.  His true

21    name is Lessage Jean Baptiste, but he's here, seat number two.

22          THE COURT:  Good afternoon, Mr. Jean Baptiste.

23          And good afternoon, Mr. Myers.

24          MR. MYERS:  Good afternoon.

25          MS. MACEDONIO:  Good afternoon, your Honor.  Elizabeth

1    Macedonio.  With me at counsel table is Carla Sanderson.  She's

2    my mentee in the Eastern District of New York, so she's going

3    to be participating, with the Court's permission.

4            Also, I am covering for Mark DeMarco, who's on trial

5    next-door, in front of Judge Preska, and he represents Jaleel

6    Baron.  I've spoken to Mr. Baron, and he consents to me

7    representing him for today's purposes.

8            THE COURT:  And your regular client in this case is

9    Mr. Buckhanon?

10           MS. MACEDONIO:  Yes.

11           THE COURT:  So they're both present and seated in the

12   jury box?

13           Good afternoon, Mr. Buckhanon and Mr. Baron.

14           DEFENDANTS:  Good afternoon.

15           THE COURT:  And good afternoon, Ms. Macedonio and

16   Ms. Sanderson.

17           MR. NEUMAN:  Good afternoon.  James Neuman, for Jammal

18   Lindo, who's in the jury box as well.

19           DEFENDANT LINDO:  Good afternoon.

20           THE COURT:  Good afternoon, Mr. Lindo.  And good

21   afternoon, Mr. Neuman.

22           And greetings to the family members who are here in

23   court today.  Thank you, all, for coming to court.

24           Mr. Swergold, may I have a status report, please?

25           MR. SWERGOLD:  Yes, your Honor.  This is the first

1    appearance before your Honor on this, which is the second

2    superseding indictment in this case, that originally just

3    charged Mr. Hamilton but now charges, including Mr. Hamilton,

4    eight total defendants.  Except --

5              THE COURT:  Everyone has been arraigned on the second

6    superseder.

7              MR. SWERGOLD:  Everybody here has been arraigned on

8    the second superseder.  There was one defendant arrested in the

9    Eastern District of Pennsylvania and is on the way up here on

10   the marshals' transport.  He was presented only in the Eastern

11   District, so when he arrives here, he will be re-presented here

12   and can be arraigned as well.  And then there's an eighth

13   defendant who is still at large.

14             And all of the defendants, except for Mr. Hamilton,

15   were arrested on March 8th, into the evening of March 8th into

16   March 9th.  Everybody sitting here appeared before Judge Ellis

17   on March 9th and was arraigned on this second superseding

18   indictment.  And the second superseding indictment --

19             THE COURT:  Including Mr. Hamilton?

20             MR. SWERGOLD:  Including Mr. Hamilton.

21             So, everybody except Mr. Hamilton was presented and

22   arraigned, and Mr. Hamilton was just arraigned because he

23   already had counsel and was in custody.

24             So, the second superseding indictment builds on the

25   earlier indictment against Mr. Hamilton and now includes --

1   Count One is a racketeering conspiracy from 2009 to

2   February 2017 for an enterprise that the government has

3   referred to as the Beach Avenue Crew, which was a group that

4   sold crack cocaine in Beach Avenue and the surrounding streets

5   in the Bronx, from approximately 2009 to February 2017, and

6   used violence to enforce their drug-dealing territory.

7           Some of those acts of violence are charged in this

8   indictment.  So, for example, Count Two is a violent act in the

9   aid of racketeering against Mr. Hamilton for a May 2015

10  shooting; Count Three is a VICAR against Mr. Jean Baptiste,

11  charging Mr. Jean Baptiste, Mr. Lindo and Mr. Baron, from

12  August 2016; then Count Four is a (b)(1)(A) narcotics

13  conspiracy against all of the defendants; Count Five is

14  firearms offense under 924(c) against all of the defendants;

15  and then Count Six is one of the original charges against

16  Mr. Hamilton, which is the felon-in-possession charge from his

17  October 31st, 2015, arrest with a firearm.

18          THE COURT:  Thank you.

19          So what arrangements have you made for discovery?

20          MR. SWERGOLD:  The government is putting discovery

21  together.  It's going is to consist largely of social media;

22  some jail calls; the contents of phones that were searched

23  pursuant to a search warrant, and we'll produce the search

24  warrant paperwork as well; NYPD files for certain acts of

25  violence and any accompanying evidence that goes with it, like,

1   for example, security footage from nearby buildings that caught

2   portions of some of the shootings.  For each of the defendants,

3   we will be producing to them individually the paperwork from

4   any of their prior arrests that would serve as part of the

5   basis for the racketeering charge as well as their criminal

6   histories and their marshal intake paperwork.

7           That's the bulk of the discovery for now.

8           THE COURT:  Are there statements?

9           MR. SWERGOLD:  There may be some statements, but to

10  the extent there are, we'll produce them to the individual

11  defendants.  There's no Title 3 wiretap.

12          THE COURT:  And no search warrants other than the

13  seized telephones?

14          MR. SWERGOLD:  I think there's one premises search

15  warrant, not connected with the arrest but from an earlier

16  time, on Beach Avenue.

17          THE COURT:  When is it that you expect to be able to

18  produce this discovery?  And in what medium are you doing that?

19          MR. SWERGOLD:  The government is going to produce

20  everything it has right now, prior to April 17th, and we've

21  talked about this with defense counsel.

22          THE COURT:  Right now, prior to April 17th?  That's a

23  30-day period, so what do you mean?

24          MR. SWERGOLD:  Sorry, I mean the discovery that it

25  currently has in its possession and anything that we get in the

1    next coming days, we will produce before April 17th, and we

2    will continue to make rolling productions as we continue to

3    investigate this crew and obtain additional evidence.  So we

4    will make this general production of everything that I've

5    talked about as well as the production for the individual

6    defendants, and our plan is to make sure we get it out to

7    defendants before April 17th.  We've already talked to defense

8    counsel about hard drives that the defense counsel can provide

9    to us so that we can load a copy for them, and then if they

10   also give us a hard drive, we can load it for their client as

11   well and provide it to MDC or MCC, for their client to view.

12            THE COURT:  So, that's the means by which you are

13   going to make it available to the clients in the facilities --

14            MR. SWERGOLD:  Yes.

15            THE COURT:  -- a hard drive that you will load?

16            MR. SWERGOLD:  Yes.

17            THE COURT:  Have you spoken with defense counsel about

18   the period of time that defense counsel believe will be

19   necessary for review of the discovery before we come back?

20            MR. SWERGOLD:  We spoke to, I think, everyone or most

21   of the defense counsel about possibly coming back in the middle

22   of June, which would give them approximately two months to

23   review all of the discovery that the government is going to

24   produce.

25            THE COURT:  Thank you.

1        Do any defense counsel wish to be heard?

2        May I take it from that, that a mid-June next

3   conference date is appropriate and at that time we can at least

4   begin to talk about the thinking about motion practice and

5   other such matters?

6        MR. TALKIN:  Yes, Judge.

7        MS. MACEDONIO:  Yes, your Honor.

8        THE COURT:  I see all yeses and no nos from the

9   defense counsel.

10        So, Ms. Ng, may I have a conference date in mid-June,

11  please.

12        THE DEPUTY CLERK:  Thursday, June 15th, 2017, at

13  12:30.

14        THE COURT:  Are all counsel available on June 15th at

15  12:30?

16        MR. MYERS:  Yes, your Honor.

17        MR. TALKIN:  Yes, your Honor.

18        MS. MACEDONIO:  Yes, your Honor.

19        MR. NEUMAN:  Yes, your Honor, that's fine.

20        THE COURT:  Very good.  So the next conference is set

21  for June 15th at 12:30 in the afternoon.

22        Is there a request for exclusion from speedy trial

23  computations, of the time from now until June 15th?

24        MR. SWERGOLD:  Yes, your Honor, so that the government

25  can produce discovery and defense counsel and the defendants

1  can review discovery and begin to contemplate any motions as

2  well as the government and the individual defendants can engage

3  in discussions to resolve this case short of trial.

4             THE COURT:  Any objection?

5             MR. TALKIN:  No, your Honor.

6             MR. MYERS:  No, your Honor.

7             MS. MACEDONIO:  No, your Honor.

8             MR. NEUMAN:  Your Honor.

9             THE COURT:  The request is granted.  I find, for the

10  reasons summarized by Mr. Swergold, that the ends of justice

11  served by the granting of an exclusion from speedy trial

12  computations, for the period from today's date through

13  June 15th, 2017, outweigh the best interests of the public and

14  of each defendant in a speedy trial.  Accordingly, that time

15  period is excluded prospectively.

16             Mr. Swergold, I neglected to ask you about victim

17  identification and notification arrangements.

18             MR. SWERGOLD:  Your Honor, the government going to

19  work with our victim witness coordinators to notify victims as

20  soon as possible.

21             THE COURT:  All right.  Thank you for that

22  undertaking.

23             Counsel, is there anything else that we need to take

24  up together this afternoon?

25             MR. NEUMAN:  Yes, your Honor.  Just briefly, my

H3FKHAMC

1   client, Jammal Lindo, has a medical issue. I brought this up

2   at the time of the arraignment. His jaw is wired shut, so he

3   cannot eat solid food. I think a medical order was put in

4   place at the time, but he just now informed me that they're not

5   giving him enough of these protein shakes, which is what he

6   needs to eat. They're giving it to him in the morning and at

7   lunchtime but not at -- so he's not able to eat anything at

8   dinner. So --

9         THE COURT: Is he at the MCC or the MDC?

10         MR. NEUMAN: MDC.

11         THE COURT: Mr. Swergold, can you get on the phone

12   right away to the counsel's office at the MDC?

13         MR. SWERGOLD: Yes, your Honor.

14         THE COURT: And then let Mr. Neuman and me know if

15   they say anything other than "protein shakes are coming for

16   dinner every night."

17         MR. SWERGOLD: Understood.

18         THE COURT: So, if necessary, I'll put an order in but

19   usually the counsel's office are helpful in straightening

20   things out like this.

21         MR. NEUMAN: Thank you.

22         THE COURT: Anything else, Ms. Macedonio?

23         MS. MACEDONIO: Your Honor, is it the Court's practice

24   to hear bail applications yourself or do you refer them to the

25   magistrate judge?

H3FKHAMC

1          THE COURT:  They should go to the magistrate in the

2     first instance.

3          MS. MACEDONIO:  Thank you.

4          THE COURT:  Thank you.  All right, then I would ask

5     that the marshals permit the gentlemen to acknowledge their

6     family members as they leave the courtroom, and I thank you for

7     making that accommodation.

8          And with that, we are adjourned.  I also just ask that

9     everyone follow the marshals' instructions about who moves

10    when.

11         Thank you.  Keep well, everyone.

12                          *  *  *

13

14

15

16

17

18

19

20

21

22

23

24

25