HCCVHAMC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

         v.                       15 CR 854 (LTS)

ALI HAMILTON, LESSAGE JEAN
BAPTISTE, DAVID BUCKHANON,
JAMMAL LINDO, MAURICE SIMMONS,
NORMAN EDWARDS, JALEEL BARON,
KYLE MULLINGS,

             Defendants.         CONFERENCE

------------------------------x

                                     New York, N.Y.
                                     December 12, 2017
                                     12:08 p.m.

Before:

                 HON. LAURA TAYLOR SWAIN,

                                     District Judge

                       APPEARANCES

JOON H. KIM,
    Acting United States Attorney for the
    Southern District of New York
JASON SWERGOLD
MAURENE R. COMEY
    Assistant United States Attorneys

SANFORD N. TALKIN
    Attorney for Defendant Hamilton

MATTHEW D. MYERS
    Attorney for Defendant Baptiste

ELIZABETH E. MACEDONIO
    Attorney for Defendant Buckhanon

1 APPEARANCES (continued)

2 BENNETT M. EPSTEIN
    Stand-In Attorney for Defendant Lindo
3    Attorney for Defendant Simmons

4 MARK S. DeMARCO
    Attorney for Defendant Baron

5

6 STEWART L. ORDEN
    Stand-In Attorney for Defendant Edwards
    Attorney for Defendant Mullings

    THE COURT:  We are here in the matter of United States of America v. Ali Hamilton, et al, number 15 CR 854.
    Counsel, would you introduce yourselves please.
    MR. SWERGOLD:  Good afternoon, your Honor.
    Jason Swergold and Maurene Comey for the government.
    THE COURT:  Good afternoon, Ms. Swergold and Ms. Comey.
    MS. COMEY:  Good afternoon, your Honor.
    MR. TALKIN:  Good afternoon, your Honor.
    Sam Talkin for Mr. Hamilton, who is the only blue shirt in the jury box.
    THE COURT:  Good afternoon, Mr. Talkin.
    Good afternoon, Mr. Hamilton.
    MR. MYERS:  Good afternoon, your Honor.
    Matthew Myers for John Baptiste, who's in seat one, closest to the Court.
    THE COURT:  Good afternoon, Mr. John Baptiste; and good afternoon, Mr. Myers.
    MS. MACEDONIO:  Good afternoon, your Honor.
    Elizabeth Macedonio for David Buckhanon, who is presently seated in the middle of the first row.
    THE COURT:  Good afternoon, Mr. Buckhanon; and good afternoon, Ms. Macedonio.
    MR. EPSTEIN:  Good afternoon, Judge Swain.
    I'm Bennett Epstein.  My client is Maurice Simmons,

1    and he is seated in the third seat.

2              THE COURT: Good afternoon, Mr. Simmons; good
3    afternoon, Mr. Epstein.

4              I understand that you're standing in for Mr. Neuman.

5              MR. EPSTEIN: Yes, I'm standing in for Mr. Neuman, who
6    represents Mr. Lindo, with Mr. Lindo's permission. I have all
7    of Mr. Neuman's information, so I'm capable of standing in for
8    any eventuality.

9              THE COURT: Very good.

10             Good afternoon, Mr. Lindo.

11             DEFENDANT LINDO: Good afternoon.

12             MR. DeMARCO: Your Honor, Mark DeMarco for Mr. Baron,
13   who is in seat number two.

14             THE COURT: Good afternoon, Mr. Baron; good afternoon,
15   Mr. DeMarco.

16             MR. ORDEN: Your Honor, good afternoon.

17             Stewart Orden.

18             I represent Kyle Mullings. He's seated in the back
19   row, closest to the bench.

20             I'm also standing in for Mr. Lee, who represents
21   Mr. Edwards. Mr. Edwards has consented that I represent him
22   today.

23             THE COURT: Good afternoon, Mr. Edwards; good
24   afternoon, Mr. Mullings; and good afternoon, Mr. Orden.

25             And also greetings to the family members and friends

1     who are here in court today.  Thank you all for being here.

2              May I have a status report please.

3              MR. SWERGOLD:  Yes, your Honor.

4              It's been quite a while since we were all before the

5     Court.  So just to backtrack a little bit, this case was

6     indicted in March of 2017.  Most of the defendants were

7     arrested on March 9th, 2017.  Everyone who was arrested at the

8     time had their initial appearance before your Honor on March

9     15th, 2017.  Mr. Simmons had a separate pretrial conference on

10    July 27, before your Honor, just because he was arrested after

11    the date of the initial pretrial conference.

12             The government made their first -- those are the only

13    conferences that we've had that deal with the substance of the

14    case.  We had a conference scheduled for June; it was pushed,

15    at the request of all parties to set a motion schedule.  I'll

16    talk about that in a little bit.

17             The first thing is we had our first round of discovery

18    on April 18th, 2017.  That consisted of individual discovery

19    for each of the defendants.  That was the criminal history.

20    There were cell phones that were seized at the time of the

21    arrest; and, if we had them for particular defendants, certain

22    records related to their time in jail.

23             Then there was global discovery for everyone, which

24    included charging instruments, jail calls that we had for any

25    of the defendants, files related to each act of violence that

1    the government either has already charged or was investigating

2    or seeking to charge at some point.  That would include the

3    general NYPD paperwork to give the defendants notice about what

4    that act of violence was, where it took place, and what exactly

5    had happened.

6             We produced phone records with respect to each of the

7    defendants.  Those related to records that we had been

8    receiving around the time of the takedown as we were trying to

9    locate the defendants.  We had a photo of each defendant that

10   was produced.  We also produced a large amount of prior arrest

11   paperwork for every -- so while we produced to the individual

12   defendants their criminal history rap sheets, we produced NYPD

13   paperwork for each prior arrest for each of the defendants that

14   the government would use at trial to prove their participation

15   in what the government is calling the Beach Avenue Crew.  And

16   so that would include, for example, arrest reports, NYPD

17   complaint reports, and to the extent that there were any, such

18   as if it was a drug dealing case or a case where somebody was

19   found with a gun, the NYPD vouchers.

20            We also produced a significant amount of search

21   warrant paperwork.  Those were search warrants for an apartment

22   on Beach Avenue, Facebook and Instagram accounts, cell phones,

23   historical cell site and cell site simulators, which the

24   government had obtained around the time of the takedown to

25   locate particular defendants.  And then we also produced any

1    Facebook and Instagram search warrant returns that we had
2    received from those companies by the time that we had produced
3    discovery.
4         We now have the next round of discovery ready to go
5    out.  It's a little late, but it's going to go out this week.
6    It will then include everything else that we have to date in
7    this Kay.  Obviously the government always continues to
8    investigate, but with this second round of discovery, the
9    defendants will have everything that the government has.
10   That's going to include some more individual discovery for some
11   of the defendants, to the extent we got another phone for a
12   particular defendant; some jail records for particular
13   defendants; and then global discovery, which is mostly
14   additional search warrant paperwork that the government
15   obtained after the original discovery went out, mostly, again,
16   Facebook and Instagram, as well as some renewed search warrants
17   for cell phones because, for example, we needed to rerun a
18   report and so we got another search warrant out of an abundance
19   of caution or because, for example, the technology has improved
20   such that the government can now get into a phone.  So, again,
21   out of an abundance of caution, we went and got another search
22   warrant.
23        THE COURT:  When you say "search warrant paperwork,"
24   you're meaning the applications and affidavits as distinguished
25   from the product of the search, or is all of that coming in at

1 the same time?

2 MR. SWERGOLD: That's coming as well, your Honor. But
3 when I break it down into search warrant paperwork, what I mean
4 is that what the government submitted to get the warrant, what
5 could be the basis for a suppression motion; and then also we
6 produced the phone returns to the individual defendants.

7 THE COURT: Thank you.

8 MR. SWERGOLD: We also have now much more Facebook,
9 Instagram, and also YouTube returns that are based on the
10 warrants that we had; so we are going to be producing those to
11 all of the defendants. We have some additional surveillance
12 video from the May 5th, 2015 shooting that is the basis for one
13 of the charges in the superseding indictment.

14 If we take a step back, there was also some
15 letter-writing between the defendants and the Court about bills
16 of particulars, as well as meet-and-confers. It was maybe
17 about a month ago or a little more than that, the government
18 was available to speak with any counsel who wanted to talk
19 about the particulars of their client's case.

20 We met with or spoke with, I believe it was, six of
21 the eight lawyers. I know, for example, for Mr. Talkin, his
22 client has been charged since 2015. We've had a lot of
23 back-and-forth discussions. He certainly knows the evidence
24 with respect to his client. I can't remember, did we talk --
25 so I had a brief conversation with Mr. Orden. Then we had more

1  detailed discussions with everybody else in which we talked
2  about specific pieces of evidence that were in the discovery.
3          We told them about generally -- without identifying
4  who cooperating witnesses were, we identified what our
5  cooperating witnesses would say about the particular defendants
6  with respect to their membership in the Beach Avenue crew, drug
7  dealing, and the acts of violence, gun possession.  We told
8  them for certain things, whether it was one cooperator, whether
9  we had multiple cooperators.  We talked about some of the
10  specific acts of violence that we were seeking to attribute to
11  some of the defendants.
12          We also talked to them about just generally what our
13  initial thinking was with respect to where plea discussions
14  might start.  I know several of the defense lawyers had since
15  come to us and asked us can we sort of talk about that process
16  a little more now.  The government is going to start putting
17  pen to paper on plea agreements and additional discussions with
18  the lawyers who want to engage in that, which is, I think,
19  almost everyone.
20          After our meetings or conversations with defense
21  counsel, we also got some follow-up from some of the defense
22  counsel; could you point me to a particular document in
23  discovery, a page number, are you seeking to use this in
24  evidence.  We've tried to answer all of those questions.  Some
25  of the questions that we've gotten have been, I think, more

1  properly addressed in the enterprise letter that will obviously
2  be coming with the motion schedule when we start talking about
3  a trial date, because that starts to get into the more details
4  that come from our cooperating witnesses.  To the extent we can
5  point defendants to particular discovery, particular acts,
6  we've tried to do that in the meet-and-confers with all the
7  defense counsel that we've spoken with.
8     So that's sort of the state of play up till today.
9  Coming in today I spoke with a few defense counsel about a
10 potential trial date.  I had originally said June, based on
11 some conversations that I had had with Ms. Beale.  But I think
12 defense counsel probably has stronger views about trial dates,
13 so perhaps it's best -- since there's a lot of them and they
14 have a lot of schedules -- that we leave that discussion to
15 sort of be led by them.
16     THE COURT:  Very well then.  Thank you.
17     Is there a spokesperson for the defense table to at
18 least start out or either way?  Will someone just stand and --
19     MR. ORDEN:  I thought we had a general consent, and I
20 was wrong.  That June looked like a good trial date for some of
21 us, but I think there's some disagreement.
22     MS. MACEDONIO:  May we have a moment, your Honor?
23     MR. ORDEN:  Maybe we should get all together now.
24     THE COURT:  That's fine.
25     Actually, can you all hold that for one minute.

1          Mr. Swergold, how much time do you believe the
2   government would need for its principal case?
3          MR. SWERGOLD:  Your Honor, that would certainly depend
4   on how many defendants are going to trial.
5          THE COURT:  How much time are you asking us to make
6   available for the trial, both the Court and defense counsel, at
7   this stage?
8          MR. SWERGOLD:  I think just based on where we are
9   today, let's say a month.  And then if defendants start
10  pleading guilty, obviously we can trim that down.  But to be
11  safe, if we were to go to trial against a large group of
12  defendants, I think a month is certainly sufficient.
13         THE COURT:  Assuming four-day weeks for presentation
14  of evidence and including jury selection and deliberation, or
15  are you saying you need four four-day weeks for presentation of
16  your evidence?
17         MR. SWERGOLD:  Your Honor, what is -- for four days of
18  presentation, what's your Honor's practice in terms of time?
19  Is it like a 9:30 to 5:30, is it a 9 to 3?
20         THE COURT:  9:15 to 4:15, with an hour for lunch.
21         MR. SWERGOLD:  Okay.
22         Your Honor, we still think that a month is a fair
23  guess to include everything.  Obviously if all defendants go to
24  trial or close to all defendants, it may make it a little bit
25  longer; but I think a full month would be sufficient for all

1                stages of trial.

2                         THE COURT:  Thank you.

3                         I'm hoping that that was helpful to defense counsel as

4                well.

5                         MR. ORDEN:  It is.  And after conferring with my

6                colleagues, it appears that because of numerous conflicts with

7                several of them, that September would be the earliest date that

8                those of us here join to go to trial.

9                         THE COURT:  Does anyone know when the religious

10               holidays occur?

11                        MR. EPSTEIN:  Rabbi DeMarco has looked it up.

12                        MR. DeMARCO:  September 10th is Rosh Hashana, and the

13               19th is Yom Kippur, your Honor.

14                        THE COURT:  So that would mean really looking to start

15               the trial after both of those religious holidays, so that would

16               be starting, say, the 24th of September?

17                        MR. SWERGOLD:  Your Honor?

18                        THE COURT:  Yes.

19                        MR. SWERGOLD:  Is there any reason not to start the

20               trial before and to just have the particular day for Rosh

21               Hashanah and a particular day for Yom Kippur, to just not sit,

22               if it's inconvenient for the parties or the jury?

23                        THE COURT:  It depends on how observant counsel are.

24               I have had counsel who said that basically they are

25               out-of-pocket for substantial periods there, and others for

1    whom the day or so is -- well, the 19th actually is a Friday,
2    so unless -- so we probably wouldn't need that date anyway.
3    But the 10th is a Wednesday; but if I'm trying the case, that's
4    not going to be feasible because I'll be in Puerto Rico
5    overseeing things that week anyway.
6             MR. TALKIN:  Your Honor, it's also a juror issue, I
7    found.  We don't know who we have coming through, so that's why
8    it usually makes sense to put that all behind us so we don't
9    have to worry with that as well.  It, A, knocks people out; and
10   the defense may want --
11            THE COURT:  Well, if we were to start on -- actually,
12   sorry, the 19th is -- actually they are both Wednesdays, so
13   that could be problematic.  So if we were going to start on the
14   24th, the week of the 1st of October, the week of the 8th of
15   October, and the week of the 15th of October, are those weeks
16   feasible for all counsel?
17            MR. MYERS:  Yes, your Honor.
18            MR. DeMARCO:  Yes, your Honor.
19            MR. EPSTEIN:  Yes, your Honor.
20            THE COURT:  So what I will do is put us down for jury
21   selection at 9:30 on the morning of Monday the 24th, with a
22   final pretrial conference on the 17th at 2 in the afternoon.
23            It is my plan and my hope to be myself available to
24   try the case in this time frame.  As most, if not all of you,
25   know, I had some very substantial responsibilities in

1  connection with the Puerto Rico insolvency proceedings, and so
2  depending on how things are going with that, which has, by
3  statute, a certain immediacy and priority requirement, I may
4  have to ask a colleague to preside over the trial.  But I try
5  to anticipate these things far enough out so that we can keep
6  to timetables we've committed and make sure that everybody has
7  the attention that's necessary.  But I just wanted to let you
8  all know so that no one would be surprised if it turned out to
9  be transferred.

10  So September 24th is the trial date.

11  Now, tell me about what you're proposing for motion
12  schedules and the enterprise letter.  I will let you know that
13  I will need time to be able to fit everything in with
14  everything else that I'm doing, so I don't want the motions to
15  come three weeks before the trial date.

16  So what do you all have in mind?

17  MR. SWERGOLD:  Your Honor, typically this is something
18  that we also did in the related cases before Judge Failla and
19  Judge Pauley.  The government likes to submit their enterprise
20  letter in connection with their motions *in limine* because it's
21  essentially a motion *in limine* and giving notice of all of
22  these other -- of the other enterprise acts under 404(b) or
23  other evidentiary grounds that the government is seeking to
24  introduce them at trial; so it sort of lines up nicely with our
25  other motions *in limine*, and then defense counsel doesn't have

to guess about what we're going to try to introduce. They can have the opportunity to oppose all our motions *in limine*, including the enterprise -- particular acts and the enterprise letter at the same time. So in those cases we did -- I think we submitted them about a month to a month and-a-half before the trial date, all our motions plus the enterprise letter at the same time. We would propose doing something similar to that.

THE COURT: So can we say here the beginning of the final week of July, since August can be issues for various people, and so that would be about seven weeks before the trial date?

MR. SWERGOLD: That works for the government.

Thank you.

THE COURT: All to be briefed within three weeks of the initial service date of the motions *in limine*, unless I'm asked for and agree to an extension.

So let me just get the specific date that we're talking about here. So that would be by July 23rd to be served. There have been no defense motions yet. Obviously discovery has not yet been completed.

When do you expect to complete the delivery of this final round of discovery?

MR. SWERGOLD: The end of this week, your Honor.

THE COURT: Have you consulted with defense counsel as

16
HCCVHAMC

to requests in terms of a motion filing deadline?

MR. SWERGOLD: No, we have not, your Honor. The government would be fine with whatever schedule the Court and the defendants want in terms of any additional motions they may have, based on things that we're going to produce that may be the basis for a suppression motion.

THE COURT: Would defense counsel like to be heard?

MR. DeMARCO: How much are we talking about?

MR. ORDEN: I took the other line; somebody else has to stand up.

Let me suggest the end of March then, Judge. Plenty of time before the trial; we don't know how much we're going to have to look at, and we may very well, based on conversations with the government, resolve this case during when we are now expecting to have formal plea offers made.

THE COURT: So does the end of March work for other defense counsel?

MS. MACEDONIO: That's fine, Judge.

MR. DeMARCO: Yes, Judge.

THE COURT: Okay. So let me just go back and get a date. So let's make that Monday the 26th of March. Let's see, that's the Monday before Easter. I'm not sure when Passover occurs, but is Easter and Passover at the same time?

MR. EPSTEIN: DeMarco, when is Passover?

THE COURT: I'm told that Passover is the 30th, which

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1 is the same as Good Friday. So we will make that deadline
2 Monday the 26th for initiating motions, and then I want to put
3 a conference on the calendar for later in that week so that we
4 can talk about whether and to what extent evidentiary hearings
5 might be necessary in connection with whatever motions have
6 been filed, and either set such hearings or finalize the
7 briefing schedule for the motions. So we'll have a conference
8 at 2 in the afternoon on Thursday the 29th of March.

MR. DeMARCO: Your Honor, does the 28th work?

THE COURT: You're not available on the 29th?

MR. DeMARCO: I'm usually in Tarrytown on Holy Thursday.

THE COURT: This will mean -- I wanted to give the government enough time to digest the motions to be able to form a sense as to whether --

MR. SWERGOLD: The 28th is fine, your Honor. We'll read quickly.

THE COURT: Okay. Good. So we'll make that 2:15 on Wednesday the 28th.

Is there a request for exclusion from speedy trial computations of the time from now until September 24th?

MR. SWERGOLD: Yes, your Honor.

Before we do that, I may have missed it, but did your Honor set an opposition date for the motions *in limine*?

THE COURT: I had said all to be briefed within three

1    weeks, which would be the default schedule; two weeks for

2    opposition and one week for reply, unless there's a specific

3    request for more time.

4              MR. SWERGOLD:  Got it.  Thank you.

5              Yes, the government respectfully requests that the

6    time between now and the trial date, September 24th, 2018, be

7    excluded under the Speedy Trial Act so that the government can

8    produce additional discovery, defense counsel can review

9    discovery, consider any pretrial motions that they may have,

10   and then the parties can prepare for trial, as well as continue

11   to discuss the possible resolution of this case.

12             THE COURT:  Any objections?

13             MR. MYERS:  There's no objection, Judge.

14             I was asked by your deputy to keep you in the loop if

15   I were to make a bail application.  And next week I just plan

16   on communicating with the mag court to be heard on bail.  So I

17   just wanted to advise you of that, for Mr. Baptiste.

18             THE COURT:  Thank you for letting me know.  It's your

19   intention to take it to magistrate's court?

20             MR. MYERS:  Yes.

21             THE COURT:  Thank you.

22             So hearing no objections to the request for exclusion,

23   I find for the reasons summarized by Mr. Swergold that the ends

24   of justice served by the granting of an exclusion from speedy

25   trial computations for the period from today's date through

1  September 24th, 2018, outweigh the best interests of the public
2  and each of the defendants in a speedy trial.  Accordingly,
3  that time period is excluded prospectively.
4           Counsel, please make sure to familiarize yourself with
5  the criminal case provisions of my chambers' rules, and also my
6  general trial rules and additional trial rules for criminal
7  cases which are specific about the submissions in advance of
8  the final pretrial conference, including joint requests to
9  charge.  I believe that those general rules say all motions *in*
10 *limine* to be fully briefed at least a week before the final
11 pretrial conference; but we had set a specific schedule here
12 because of the breadth and type of case.
13          So there are other provisions of those rules which I
14 can't recite to you, but they are written down, so please do
15 familiarize yourself with those and make sure that all of the
16 final pretrial conference-related submissions are in a week
17 before the final pretrial conference, unless I set a different
18 date.
19          Should we schedule another conference before March
20 29th, or will you just reach out to me if you need me?  Looks
21 like you'll reach out to me if you need me.
22          Anything else that we should take up together this
23 afternoon?
24          MR. SWERGOLD:  Not from the government, thank you.
25          MR. ORDEN:  No, your Honor.  Thank you.

HCCVHAMC

1     MS. MACEDONIO:  No, thank you, Judge.
2     THE COURT:  Thank you.
3     Keep well, everyone.
4     Safe and healthy holidays.
5     I'd ask that you follow the instructions of the
6  marshals as to who should move when.  I'd ask the marshals to
7  let the gentlemen acknowledge their family members as they are
8  leaving the courtroom.  Thank you for that accommodation.
9     We are adjourned.
10                    *   *   *