I727LEEC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                      15 Cr. 854 (SHS)

JEAN BAPTISTE LEESAGE,

                Defendant.

------------------------------x
                                    New York, N.Y.
                                    June 2, 2018
                                    12:00 p.m.


Before:

                    HON. SIDNEY H. STEIN
                                    District Judge


                        APPEARANCES

GEOFFREY S. BERMAN
        United States Attorney for the
        Southern District of New York
BY:  MAURENE COMEY
        Assistant United States Attorney

MATTHEW MYERS
        Attorney for Defendant

I727LEEC

1          (Case called)

2          (In open court)

3          MS. COMEY:  Good morning, your Honor.  Maurene Comey

4    for the government.

5          THE COURT:  Good morning.

6          MR. MYERS:  Matthew Myers for Leesage Jean Baptiste.

7          THE COURT:  The government and defense should get

8    together on what this man's first name is and last name is.  I

9    think part of -- and then I will change the caption once you

10   agree upon it.  I think part of the problem may be that -- and

11   this may be true in Haiti -- when you say your name, you do it

12   last name first, first name last.  I don't know.  I understand

13   the defense's position is that his last name is Jean Baptiste.

14   Normally, that would be a first name.  But if the parties can

15   agree on whatever it is, I will change the caption.  It's a

16   little silly, it's not a big silly, but it's a little silly for

17   the government to be referring to him one way and the defense

18   referring to him another way.

19          All right.  This is an application for release on

20   bail.  That is, it's an appeal from the determination of the

21   magistrate judge.  Is that correct, sir?

22         MR. MYERS:  That is correct.

23         THE COURT:  OK.  Tell me whatever you want to tell me.

24         MR. MYERS:  Judge.

25         THE COURT:  Your basic submission is there is no proof

1    by the government; all there is is just allegations.  Is that

2    it?

3              MR. MYERS:  That's part of it.  I won't be too

4    repetitive, but I do want to give a five minute summary.

5              THE COURT:  Of course.

6              MR. MYERS:  As said in the prior bail application, my

7    client is 36 years old now.  It doesn't make it dispositive

8    that he can't deal with younger kids in 2009.  I know the

9    allegation by the government is that he was some sort of

10   leader.  And, as I stated previously and included in my

11   application, most of the other codefendants who were involved,

12   who were on for trial in several months from now, would have

13   all been teenagers, 16, 17, 18, 18, 17, 15 years old.  It can

14   happen that an older person has younger kids working for him --

15   I'm not that naive to think that doesn't happen -- but there is

16   really no other indication in the case that he has connections

17   with all of those people in 2009.

18             I understand they have a cooperator, and I think we

19   know who she is, but if you look at the discovery -- and I know

20   you haven't -- but this Beach Avenue crew, they are individuals

21   who are all over social media.  My client is nowhere to be

22   found on social media.  He has no connection with any of these

23   people from 2009, 2010, 2011, 2012.  There is no photos, there

24   is no text, there is no calls between any of these people.

25   They have one female coming in and saying, well, he used to

1   deal drugs with me.

2          So, it's a strange case in federal court when you say,

3   well, all the other codefendants are engaged in a lot of social

4   media and you see them all over social media, but there is one

5   video, a YouTube video with my client's arm around one of the

6   codefendants, so therefore he must be associated with a

7   racketeering conspiracy.

8          There is no physical evidence in the case, other than

9   what I think we're going to have to contest at a suppression

10  hearing.  There is two dismissed cases from state court.

11         THE COURT:  This is a presumption case, right?  So

12  you're facing a rebuttable presumption.

13         MR. MYERS:  Correct.

14         THE COURT:  All right.

15         MR. MYERS:  So, somebody gets arrested, they issue a

16  search warrant in 2017.  When the case happens, they go in your

17  house, there is no physical evidence.  There is no physical

18  evidence in your car.  You don't have drugs on you.  You don't

19  have guns.  You don't have scales.  You have no physical

20  evidence whatsoever against defendant, but you do have in 2016

21  pulled over with his wife and then the case was dismissed.  You

22  do have him outside an apartment door where they're executing a

23  search warrant, all of a sudden there is physical evidence on

24  him but, no, the case is dismissed in the Bronx again.

25         THE COURT:  Wait.  My notes indicate that he in fact

1   has five prior convictions.  Is that right?  You're telling me

2   about cases that have been dismissed, but it looks like there

3   are at least five cases that -- I don't know whether it's by

4   plea or trial -- but convictions for which he has done 18

5   months, 45 days, 60 days.

6           MR. MYERS:  Correct.  The three main cases:  2004 he

7   did a year; and he did two to six, and then 18 months.  Two of

8   those were grouped together, and then in 2010 he did 18 months.

9   And those are cases seven years before he got arrested on this

10  matter.  They're claiming that as part of those cases that's

11  when he was dealing with people in the street involved in this

12  case.  They are all historical cases; they are not cases from

13  the last five years where he dealt with the codefendants.

14          And in fact I think there will be almost no evidence

15  that he dealt with the codefendants in this case as part of a

16  RICO conspiracy other than this one cooperating witness they

17  have.

18          THE COURT:  Obviously, I want to hear about that from

19  the government.

20          MR. MYERS:  And of course he was incarcerated on those

21  18 months.  From 2009 he copped a case, and then in 2010 and

22  2011, for the 18 months he was locked up, and that's when they

23  say the conspiracy started, right there.  18 months, at the

24  very beginning of the conspiracy, would have had to have been

25  operating from jail to participate in it.  It just doesn't make

I727LEEC

1    any sense.

2              THE COURT:  It would not be the first conspiracy to

3    operate from jail, but go ahead.

4              MR. MYERS:  True.  But they of course would need to

5    bring forth jail calls, notes, evidence that he was operating

6    from jail; and they have none of that.  They have no calls.

7    They have no wiretaps in this case.  They have no text

8    messages.  They have no social media to say that he was engaged

9    in a RICO conspiracy.

10             THE COURT:  You're focusing me just on what I thought

11   was indeed the main point of your brief, that there's no

12   evidence.

13             MR. MYERS:  OK.  I just need to emphasize it, Judge.

14             THE COURT:  I didn't mean that negatively.  I just

15   wanted to make sure we were on the same wave length.

16             MR. MYERS:  He worked in a union in 2000 just when he

17   got out of jail.  He was an Uber driver in 2015, 2016.  We were

18   a little built short notice, but the last bail application I

19   made he had his mother and two children here, his mother and

20   father, and I put at the end of the application that of course

21   he had lived pretty much in the same neighborhood for 26 years.

22             I think the main thrust -- and I will summarize and

23   finish here -- is that when we're talking about -- I understand

24   it's a rebuttable presumption, but it is a presumption case, so

25   you're talking about a high threshold, but you're also talking

1  about no set of conditions.  It almost seems impossible that if

2  his father is willing to come in and put up the house for

3  300,000 -- which is paid for, there is no attachments or liens

4  or any kind of mortgage on that -- and $150,000 worth of

5  signatures, three financially responsible people, intensive

6  pretrial supervision, travel restrictions, surrender of

7  documents -- he only left the country one time on a cruise --

8  curfew and ankle monitoring, or just flat-out home confinement,

9  it seems those onerous conditions would pretty much incarcerate

10  him at his house with his wife and two children.

11        I note in the last application the government likes to

12  say, well, anything could happen from somebody's apartment.

13  They could deal drugs from the apartment, they could do

14  whatever it is; just use your most pejorative wild imagination

15  that things can be done when you're on home confinement --

16        THE COURT:  One of the notes hear says that he lives

17  apart from his wife and children.  Is that true?  In other

18  words, you're saying he would be living with his wife and

19  children.

20        MR. MYERS:  Yeah.

21        THE COURT:  Is this note correct?  One of my notes

22  states "Lives apart from wife."  So I don't know where you

23  would be having him stay.  It may be an incorrect note.

24        MR. MYERS:  2391 Hoffman street.  He lives with his

25  wife and two children.  I don't know why that was noted by the

1  previous --

2          THE COURT:  It may be incorrect on my part.

3          MR. MYERS:  So, I ask that I think those conditions

4  would be so onerous.  Of course he could help me prepare for

5  trial also, from a selfish perspective, and he would pretty

6  much be incarcerated in his own house with his wife and two

7  kids, and I think that would overcome it.

8          THE COURT:  Thank you.  I appreciate it.

9          Government, the defense has put it succinctly on page

10  5 of document 212:  "The weakness of the government's case is

11  magnified by the fact that this is a multi-year, multi-agency

12  investigation and there is absolutely nothing tangible

13  attaching or connecting Mr. Baptiste to any criminal conduct.

14  No bank records, no audio recordings, no surveillance videos,

15  no ledgers, no narcotics, no firearms and no admissions."

16          Speak to me.

17          MS. COMEY:  Certainly, your Honor.  Let me just begin

18  by saying overall that I believe the government's case as we

19  have proffered it in the prior bail application was somewhat

20  misrepresented just now by defense counsel.

21          As I said repeatedly before Judge Parker, the

22  government expects to call at least six cooperating witnesses

23  at trial in this matter -- six at least -- who will point out

24  this defendant and say that they either personally purchased

25  crack cocaine from him on Beach Avenue or witnessed him selling

I727LEEC

1   crack cocaine on Beach Avenue.

2           Multiple witnesses will testify that during the time

3   period of this conspiracy during 2009 and 2016 the defendant

4   directed them to go to other members of the Beach Avenue crew

5   to obtain crack cocaine and introduced them to other members of

6   the Beach Avenue crew.

7           Additionally, at least one of those six cooperating

8   witnesses we anticipate will testify that early on, around 2008

9   or 2009, this cooperating witness was a leader of a neighboring

10  drug crew who went to a meeting of drug crew --

11          THE COURT:  Wait just a moment.  You're talking now

12  about the cooperator, not about this defendant.

13          MS. COMEY:  Yes, your Honor, just to provide context

14  for what I expect this cooperator's testimony will be.

15          I expect, stepping back, that the evidence at trial

16  will show through evidence -- including multiple cooperating

17  witnesses as well as social media evidence, corroborated by

18  seizures by law enforcement during the course of the

19  conspiracy -- that the Beach Avenue crew that's charged in this

20  indictment operated in and around Beach Avenue in the Bronx.

21  They controlled crack cocaine sales there, and they protected

22  their territory with guns.

23          There were other crews in neighboring areas in the

24  same general neighborhood in the 43rd Precinct of the Bronx.

25  One of our cooperating witnesses -- who we expect to testify at

1    this trial -- was a leading member of one of those neighboring

2    crews, and I expect he will testify that in around 2008 or 2009

3    he attended a meeting, a meeting of the leaders of different

4    members of these crews.  And the leader representing Beach was

5    this defendant, who went to meet with other leaders of

6    different crews in this area, to talk about their territory, to

7    try to squash any beef, and to talk about how they were going

8    to operate without bumping into each other.

9            So, there is going to be overwhelming evidence from

10   cooperating witnesses alone who will independently identify

11   this defendant as a leading member of the Beach Avenue crew, as

12   somebody who was distributing crack cocaine with other members

13   of Beach Avenue from at least 2008 all the way up through -- I

14   think the most recent cooperating witness puts him in 2015.

15           They are corroborated by multiple seizures of crack

16   cocaine --

17           THE COURT:  Just a moment.

18           MS. COMEY:  Yes, your Honor.

19           THE COURT:  All right.  Don't tell me about evidence

20   that you have against the Beach Avenue crew in general.  If you

21   have multiple seizures of cocaine that you tie to this

22   defendant through evidence, that I want to hear about.

23           MS. COMEY:  Yes, your Honor.  There are three seizures

24   of crack cocaine from this defendant during the charged time

25   period -- charged conspiracy:  One in 2010 -- which is not the

1    subject of a suppression motion.  That is what resulted in the

2    guilty plea that defense counsel referenced -- one in 2014 and

3    one in 2016, which I believe will be the subject of the

4    suppression hearing.

5              On each of those occasions law enforcement recovered

6    multiple baggies of crack cocaine.

7              THE COURT:  I'm sorry.  Is there a pending motion to

8    suppress?

9              MS. COMEY:  Yes, your Honor, there is a pending motion

10   to suppress the 2014 seizure and the --

11             THE COURT:  I take it it hasn't been fully briefed.

12             MS. COMEY:  That's correct, your Honor.  Our

13   opposition is due the end of next week.

14             THE COURT:  Now I understand why I haven't unpacked

15   it.

16             MS. COMEY:  Yes, your Honor, but those seizures

17   themselves -- which as I understand it the circumstances of the

18   seizures are being charged challenged but the fact of the

19   seizure is not.  There were three different instances when law

20   enforcement recovered from this defendant's person multiple

21   baggies of crack cocaine that were packaged for redistribution.

22             Now, the defendant pled guilty to possessing that

23   crack cocaine in 2010, and I would note that the conspiracy in

24   the indictment is dated starting back in 2009.  So, our theory

25   at trial would be that that possession of crack cocaine was

1  part of the charged conspiracy which started in 2009, and then

2  the conviction came in 2010.

In addition, I would note that since the last bail

4  argument before Judge Parker, I had the opportunity to review

5  the extraction of a cell phone that was seized from this

6  defendant, which was provided to defense counsel in discovery.

Now, law enforcement was not able to recover

8  everything from that phone, but they were able to recover

9  contacts as well text messages from a few days in early January

10 of 2014, and those are significant because four of the contacts

11 in that phone reflect the street names of four of the

12 defendant's codefendants.  They include Kase, Poppy, Smiley

13 and Jah, which are the street names of codefendants Mullings,

14 Lindo, Hamilton and Baron.  It also includes over just the

15 course of a couple days of text messages which my office was

16 able to recover, texts that make clear that this was a drug

17 phone.  There are repeated requests for the defendant asking

18 him if he has 25, asking him do you have the same thing as last

19 time, asking him you good?  And the defendant responds saying:

20 Not yet, later, or I need to put that together.  Or there were

21 two occasions at least by my count where he directed customers

22 to Beach or to my man from Beach.  He was also asked at one

23 point if he's got soft, apparently code for powder cocaine.

In other words, your Honor, this phone -- just a

25 couple of days of text messages from early 2014, during the

1   course of the charged conspiracy -- demonstrates that this

2   defendant was distributing narcotics and was sending customers

3   to other people on Beach Avenue, corroborating further what we

4   expect the cooperating witnesses -- at least six of them -- to

5   testify to.

6           And then with respect to social media, defense counsel

7   noted that there is a Youtube video from the time of the

8   charged conspiracy during which a member of the conspiracy raps

9   about crack cocaine, cooking crack, being in the Beach -- being

10  with Beach, guns and shootings, and on one occasion two people

11  in the video display a large wad of cash.

12          THE COURT:  Is he on the video?

13          MS. COMEY:  The defendant is present in the video.  He

14  does not speak, but he is with the group of people on that

15  video.  So, he is part of the social media evidence in that

16  respect.  And the defendant's own social media also includes at

17  least a couple posts that he tags as Beach or Beach Ave., which

18  we expect to offer at trial his affiliation with the Beach

19  Avenue crew.

20          So with all of that, taken together, we believe there

21  is overwhelming evidence of the defendant's guilt here, and

22  that's just on the drug piece of it.

23          In addition, we expect to have at least three

24  different cooperating witnesses testify that during the charged

25  conspiracy they saw the defendant carry a firearm.

1      We also expect that one of the cooperating witnesses

2  will testify that during the charged conspiracy, the defendant

3  shot at this cooperating witness that was in or around 2009, so

4  early on in the conspiracy; and then another cooperating

5  witness we expect to testify was confronted by this defendant

6  and another individual.  The other individual with the

7  defendant had a gun.  The defendant had I believe it was a

8  knife or a razor.  And while this cooperator was held at

9  gunpoint, the defendant slashed the cooperator with the knife

10  or the razor.  This was again in around 2009.

11      Additionally, the defendant is charged with being

12  aider and abettor to a shooting that took place in 2016.  On

13  that occasion other members of the Beach Avenue crew confronted

14  a cooperating witness.  The defendant was with this group of

15  people from Beach Avenue going over to confront this

16  cooperator, and one of the people that the defendant was with

17  pulled out a gun and shot at this cooperating witness.

18      Now, although the defendant was not a shooter in that

19  particular instance, he was there as backup, he was there as

20  part of the group to confront this cooperating witness, and he

21  was, as I expect the cooperators will testify, a leader of the

22  Beach Avenue crew who was in a position to direct others to

23  carry out violence.

24      Your Honor, given the strength of all of that

25  evidence, we do believe that there is not only a risk of

1    flight, given the potential penalties -- a mandatory minimum of

2    20 years and a maximum of life, which may become all the more

3    real as the defendant receives 3500 material, receives our

4    enterprise letter and comes closer and closer to trial -- but

5    also a serious danger to the community, not only that the

6    defendant would continue his narcotics activity but also that

7    he would endanger the community, and more specifically a real

8    serious concern here is for our witnesses.  Not all of our

9    witnesses are detained.  Some of them are, but some of them are

10   at liberty in the community, and many of our cooperating

11   witnesses who are detained have family and loved ones who still

12   live in the community, and we are concerned that this defendant

13   could pose a danger to them, especially as he learns their

14   identities when he receives 3500 material.

15           Moreover, given the defendant's own criminal

16   history -- which involves multiple prior felony drug

17   convictions, none of which appear to have deterred the

18   defendant from participating in additional criminal activity,

19   including the possession of crack cocaine for redistribution on

20   multiple occasions following all of those convictions -- we do

21   not believe that the defense can overcome the presumption that

22   he poses a danger to the community.

23           THE COURT:  All right.  Thank you.

24           Defense?

25           MR. MYERS:  Nothing further, Judge.

1          THE COURT:  All right.  The presentation by the

2     government really supplies to my mind some of the missing

3     information set forth by the defense as I said on the bottom of

4     page 5.  There seems to be extensive cooperating evidence here,

5     plus the three crack seizures, the time he spent previously in

6     prison, the fact that multiple baggies were found on him.  I'm

7     also concerned about the cell phone with the street names, the

8     contacts and the text, they talk about soft.  They talk soft

9     usually is cocaine and hard is crack.  But do you have 25,

10     directing people to Beach.  It seems reasonable to assume

11     that's not traffic directions.  Plus cooperators who will

12     identify this defendant specifically was carrying a firearm.

13          I do find that the rebuttable presumption has not been

14     overcome here.  The presumption that there is no condition or

15     combination of conditions that will assure the appearance of

16     the defendant and the safety of the community has not been

17     overcome.  Indeed, I do find that there is no condition or

18     combination of conditions that will assure his appearance as

19     well as the safety of the community, and I'm denying the

20     appeal.  He remains remanded.  Thank you.

21          Do we need a time for a fact hearing on the motion?  I

22     haven't looked at the motion yet.

23          MS. COMEY:  I do believe that it will require a fact

24     hearing.  AUSA Swergold covered the last conference for me, so

25     I don't recall whether the court set a date for the fact

I727LEEC

1  hearing or otherwise.

2          THE COURT:  I normally don't, because I want to think

3  about whether a fact hearing is indeed required.

4          Defense, I take it you are not arguing a hearing is

5  not required.  Correct?  I assume you're asking for the

6  hearing.

7          MR. MYERS:  That's correct.

8          THE COURT:  All right.  When is it going to be fully

9  briefed?  Let's get a hearing down now.

10         MS. COMEY:  Your Honor, my response I believe is due

11  on July 11, and I don't recall whether there was a reply date

12  set.

13         MR. MYERS:  There was.  It was the 18th for the reply.

14         The problem is I start a three week trial on the 23rd

15  in the Eastern District.

16         THE COURT:  Can we get the fact hearing before the

17  23rd, in other words have it the week of July 16th?

18         MR. MYERS:  I guess we could potentially have it on

19  the 19th.

20         THE COURT:  Let's make it 10 a.m. July 19.  And if you

21  can get your reply in earlier, sir, that will help, before the

22  18th.

23         All right.  A fact hearing on the motion to suppress,

24  July 19, 10 a.m.  Anything else?  Government?

25         MS. COMEY:  Not from the government, your Honor.

I727LEEC

1          THE COURT:  Anything else, defense?

2          MR. MYERS:  Nothing further, Judge.

3          THE COURT:  All right.  I appreciate you're consenting

4   to have that hearing just before your trial in the other case.

5   Thank you.

6          (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25