UNITED STATES DISTRICT COURT- SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against –

LESSAGE JEAN BAPTISTE,                           15 CR 854 (SHS)

                  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

DEFENDANT JEAN BAPTISTE'S RESPONSE MEMORANDUM OF LAW IN SUPPORT
OF HIS MOTION TO DENY GOVERNMENT'S IN LIMINE MOTION WHICH SEEKS
CONCURRENTLY TO ADMIT AND TO PRECLUDE CERTAIN EVIDENCE AT TRIAL

Matthew D. Myers, Esq
Myers Singer Galiardo, LLP
299 Broadway
Suite 200
New York, NY 10007

I.      INTRODUCTION

On behalf of Lessage Jean Baptiste, we respectfully submit this opposition to the Government's Motion in Limine dated July 23, 2018.  The Government seeks to admit against Mr. Baptiste the following evidence of alleged charged, and uncharged, "criminal activity" or facts which the Government claims are criminal in nature or pertinent to the conspiracy:

1. The Government seeks to introduce Mr. Baptiste's prior incarceration.

2. Alleged Evidence of Witness Intimidation.

3. Preclusion of Cross Examination by the Defense of Certain Topics including Prostitution, Endangering the Welfare of a Child, Domestic Violence Assaults, and Sexual Harassment Convictions.

ARGUMENT

Federal Rules of Evidence 401 and 403 play an extremely important gatekeeping function. If evidence is not "of consequence in determining the action" it is simply not relevant. See Fed. R. Evid. 401. The Court may exclude evidence if its probative value is substantially outweighed by "unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. The proffered arrest "evidence" in the Government's July 23, 2018 letter should be precluded under Rules 401 and 403. The sole purpose the Government seeks to introduce this evidence is to show propensity to commit crimes, which is clearly prohibited by FRE 404(b).

While it is true that the Circuit Court has taken an inclusionary view approach to any prior crimes evidence, it does not invite the Government "to offer, carte blanche, any prior act of the defendant in the same category of crime."  United Sates v. Garcia, 291 F.3d 127 (2d Cir. 2002).  The Second Circuit approves of the admission of prior misconduct evidence when the prosecution must defend issues of knowledge, absence of mistake, or the intent of the defendant engaged in the conspiracy or those issues are eventually raised by the defendant during the trial.  United States v. Oshatz, 912 F. 2d 534, 542-43 (2d Cir. 1990).  Our is not such a case.  It is clear the prosecution is not using such facts in a defensive form to ward against issues raised by the defense such as motive, intent, or lack of knowledge.

The prosecution has informally committed to calling 8-10 cooperating witnesses who will apparently testify to significant numbers of narcotics transactions.  The need to place a defendant's prior criminal narcotics case(s) and incarceration is not only prejudicial but invites the jury to view the accused as having a propensity to commit crime especially in light of the fact that the defendant has not raised any such defenses of lack of knowledge, lack of intent, or mistake.  Only then would the Government be permitted to rebut such a defense.  The evidence may be appropriately reserved for a rebuttal case to counter the defense's claims but to permit such prejudicial evidence on the Government's direct case is unnecessary and impermissible as the probative value is outweighed by the obvious prejudice.  By analogy, no Court would permit an impeachment of a Defendant who elected to testify on his own behalf which included every prior narcotics conviction if the convictions specifically did not go to the issue dishonesty or false statement.  US v. Fearwell 595 F 2d 771 (D.C. Cir 1978).  Here the

Government seeks to present prior narcotics convictions and the incarceration that followed under the faulty premise that such incarceration would not tarnish the defendant so significantly and that he could still get a fair trial.

The Government seeks to introduce Mr. Baptiste's incarceration from the period of May 2010 to October 2011. It is well established that proof of incarceration is extraordinarily prejudicial to a defendant. United States v. Pena, 978 F. Supp. 2d 254, 262-63 (S.D.N.Y. 2013). Mr. Baptiste was returned on a bench warrant in June of 2010 and was clearly not incarcerated in May of 2010. He was finally sentenced to two-years incarceration in August of 2011 to begin that sentence. Additionally, his Criminal History Report fails to reflect the subsection he pled guilty to under State of New York Penal Law 220.16. PL 220.16(1) deals with possession of a narcotic with the intent to sell. PL 220.16(7) involves simple possession of a narcotic involving one-eight ounce or more and could be construed as a subsection reflecting the personal use of cocaine. Defense Counsel assumes the Government simply seeks to introduce the periods of incarceration for Baptiste and not mention the charges he pled guilty to which seems to be less than clear from his criminal history sheet. Not only does the Defense object to the introduction of the crime for which he was convicted/incarcerated for but until the Government produces Mr. Baptiste's Department of Correction's inmate record we object to specific mentioning of a "period" of incarceration when that period has not yet been clearly established. In light of the fact that the Government may only be seeking to introduce the incarceration period for the purpose of eliminating the defense of mistake, or lack of intent on Baptiste's part to the conspiracy during this time frame then the Defense agrees that it will not introduce such a defense through cross examination or

summation thus eliminating such concern.   However, since the period of incarceration seems to be unclear and the Beach conspiracy was allegedly in its infant stages the Defendant objects to the Government's introduction of this disputed fact unless it can present a clearer date as to Baptiste's incarceration.

Additionally, the Government claims in their Enterprise Letter (p. 3) that Mr. Baptiste "broke away from the Taylor Avenue Crew and began supplying his own crew on Beach Avenue."  Whether there is any truth to that statement remains to be seen.  The point remains that the Government fails to give a date or an approximate date that this event of starting up a new conspiracy (Beach Avenue Conspiracy) occurred on.  It is pertinent that the Government has relied upon a theory that the Beach Avenue Crew began to operate in 2009-2017 according to the Indictment.  Additionally, the Enterprise Letter includes a chart (p. 5) that concedes that Mr. Baptiste was selling narcotics with the Taylor Avenue Crew not the Beach Avenue Crew.  The Government now seeks to introduce an incarceratory period from the beginning of 2009 without furnishing the specifics of why or how those convictions were the result of narcotics activity from the Taylor Avenue Crew or the Beach Avenue Crew.  There are several reasons this evidence should never get before the jury.  Initially the jury may easily conclude that since Mr. Baptiste was incarcerated for a two-year period it is likely (propensity) he committed the offense for which he is being tried.  Secondly, beyond the propensity concerns, is the likelihood of a juror concluding this similar crime is in fact other crimes evidence.  The mere fact that it is a crime which is similar in nature brings about the obvious conclusion in a juror's mind that this particular defendant has a propensity to commit a crime

especially when dealing with narcotics. No sanitizing instruction can ever cure that defect whether the name of the crime for which he was convicted is mentioned or not.

The Government's position appears to be that Mr. Baptiste's conviction arose out of the same transaction or series of transactions as the offense charged. Nothing in the Government's submission reflects such specificity concerning the conviction they seek to introduce. Evidence which occurs before a charged conspiracy but clearly part of a pattern of the conspiracy could be admitted. However, in our matter the Government concedes that Mr. Baptiste was operating with a completely separate group at Taylor Avenue. Therefore, this conviction may be additionally prejudicial in light of the fact that the March 2010 arrest which lead to an eventual August 2011 sentencing could have very easily been part of an entirely different set of narcotic transactions stemming from Baptiste's alleged connection to Taylor Avenue participants and not tied to this Beach Avenue Conspiracy. Without additional facts about how this conviction was tied to our conspiracy the Court should demand more facts before making a decision on its relevancy.

The Government expects some of the cooperating witnesses to testify they had conversations with defendants while they were incarcerated. The Government references Hamilton's discussions with Defendant Lindo. There are simple ways of eliciting the substance of the calls from defendant to defendant without mentioning if they were on Department of Corrections or Bureau of Prison's phone lines. No mention should be ever be made of a defendant's incarceration.

The Government references (p.8) of their Motion in Limine phone calls made by Mr. Baptiste in April of 2017 referencing potential witnesses who were "telling" on him who were members of the Taylor Avenue Crew. The Government suggests erroneously that Mr. Baptiste is using the word "telling" to mean that Taylor Avenue members will cooperate about criminal activities. The Government has twisted and overly read into the nature of this call and its content. After several bail applications where prosecutors have mentioned that they are basically using cooperators to prove their case Mr. Baptiste's reference to the fact that someone is "telling" is clearly synonymous with speaking to prosecutors. This does not automatically infer Mr. Baptiste is admitting that these people have devastating information to give or that he is guilty of crimes and he is fearful of what they may say. The Government's interpretation that Mr. Baptiste's use of the word "telling" means that the cooperators have precise information on Mr. Baptiste and they are "telling" information that Mr. Baptiste does not want to get out is a liberal interpretation that is prejudicial to the defendant especially when this one word can have numerous interpretations. In point of fact, the subsequent lines from that call clarify that the use of the term "tell".

**Baptiste**: All the "expletive" from that block told. They all told. What about Beach…what about Beach (a clear reference to the fact that the cooperators were asked by their handlers or Agents to tell us about the Beach group.). "Everybody telling"…a reference to the fact that everyone is trying to get out of their cases."

 **Mr. Baptiste's wife:** "They have nothing to tell on you."

**Mr. Baptiste's**: "I don't "expletive" with them."  I was locked up for two years.  I was locked up in 2009."  "This is not really my case."

The clear interpretation from Mr. Baptiste's use of the word "telling" is not that the cooperators are telling things to the prosecutors that Baptiste's is afraid they may know but rather that the cooperators are "speaking" to the authorities about him and that he thinks they are going to lie about the role he played.  His follow-up to the use of the word "tell" is to proclaim I have nothing to do with them or this matter because I was locked up during that period.  Whether that is true or not is not the point of this legal issue.  The Court should not permit the Government to elicit statements which are clearly misleading to a jury by extracting the parts they believe are inculpatory simply because they believe the defendant is guilty so therefore he must have been using the phrase "everybody (sic) telling" to reflect the fact that Taylor Avenue cooperators are saying things to prosecutors that make Mr. Baptiste guilty.  To the contrary, his follow-up statement reflects the fact that he believes they are lying and since he was incarcerated at that time he could not have committed crimes they may be lying about.  "I was locked up…and this is not really my case" do not reflect the mindset that Mr. Baptiste was in fear of them "telling" on him using third grade linguistics.

Mr. Baptiste's reference to a "side hustle" (p.8) is completely misconstrued by the Government.  A side hustle is simply any secondary job.  The word choice does not infer that your first job is selling narcotics.  For reference, see Mr. Baptiste's 6/20/18 8:45am TRULINCS message to "Myppl Family" where Mr. Baptiste can be quoted as writing the following in an email:  "what it's been 3 yrs now since u started the cleaning business

right??/ you should also look into cruise planners.com/franchise for a **side hustle."** Clearly, Mr. Baptiste is referring to a second job for his wife besides the present cleaning business. That reference to a "side hustle" refers to the second employment opportunity of working as a cruise planner. Mr. Baptiste's reference to his wife second job clearly does not infer her primary job is to deal drugs. To permit the prosecution to elicit such testimony that mentioning a "side hustle" infers that your original business must be dealing narcotics is to permit wild speculation.

## Preclusion of Defense Cross on Limited Topics

Federal Rule of Evidence 608(b) permits inquiry where the inquiry involves a witness' character for truthfulness or untruthfulness. The Government seeks to limit the Defense's ability to cross exam CW-1 on the apparent basis or theory that her twenty some odd years of engaging in the crime of prostitution for "**drugs** and money" are of limited import. The Defense need not go into the importance of cross examination of a cooperating witness which forms the bedrock of our system and a defendant's Sixth Amendment right to confront the witnesses against him or her. Davis v. Alaska, 415 U.S. at 315-316 (1974). Here we have a witness that will presumably attempt to inculpate the defendant's association with the Beach Avenue narcotics trade. By the Government's own admission, the witness herself deals in narcotics in some form of barter for prostituting herself. Her familiarity with narcotics, her sources to purchase or obtain narcotics may all be explored at a narcotics-based trial. The Government's second subtle admission is that the witness (CW-1) has been using narcotics for the better part of 20 years which bears directly on her ability to recall facts.

CW-1 was also arrested for reckless endangerment after apparently leaving her child with a friend so that "she could attend a doctor's appointment."  The Government admits that this innocent act prompted the friend to suddenly take the child to a police precinct which not only lead to the arrest of CW-1 but also the loss of her custody rights. The Defense should be permitted to confront this witness on her obvious desire to put her interests above society's.  Additionally, it is patently apparent that her story to the Government of leaving the child in the safe hands of a friend to simply attend a doctor's visit was misleading.  Her arrest and eventual custody loss reflects facts far more serious and brings into question her credibility which should be rigorously tested.

CW-2 acts of apparent domestic violence ending up in "bruising only" is self-reported is a weak attempt minimize domestic abuse.  Should the witness deny that he has ever assaulted his girlfriend and has acted in self-defense as the prosecution seems to insinuate in their motion then the defense's inquiry will end at that point.

CW-3's history of domestic violence which has been categorized as "domestic disputes" may also be termed misdemeanor assaults.  The multiple instances and arrests show a pattern of a man who has placed his interests above others.  His limited admissions to the Government again strain credibility in light of the fact that numerous women have come forward and multiple arrests have been made. It is virtually meaningless that the cases did not proceed in the court system.  We ask the Court to permit limited inquiry about these assaults.

## **Conclusion**

Based on the foregoing, the Government's applications should be denied.

DATED:  August 3, 2018:  New York, NY                    Respectfully,

/s/ Matthew D. Myers

Electronic Signature

Matthew D. Myers, Esq.

Cc: ECF, Co-counsel, AUSA, Mr. Jean Baptiste