

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 27, 2019

**BY ECF**
The Honorable Sidney H. Stein
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Ali Hamilton, et al.*,
             S3 15 Cr. 854 (SHS)

Dear Judge Stein:

     The Government respectfully submits this letter in response to the Court's December 4, 2018 Order (ECF No. 308) directing the Government to set forth its views on the role and relative culpability of each of the eight defendants in the above captioned case. The first part of this letter sets forth the factual background of the case; the second part sets forth the relative culpability of each respective defendant—starting with the least culpable (defendants Simmons and Mullings) and working forward to the must culpable (defendant Hamilton).

    I.    **Background – Beach Avenue Crew**

     The Beach Avenue Crew (or "Beach") was a criminal organization whose members and associates engaged in the distribution of narcotics and acts of violence, including attempted murder and assault with a deadly weapon. Beach was a local, street-level gang that operated in and around the vicinity of Beach Avenue in the Bronx, New York. From at least in or about 2008, members and associates of Beach regularly distributed cocaine base, or "crack," as well as heroin and marijuana, in and around the area of Beach Avenue between East Tremont Avenue and the Cross Bronx Expressway. Beach controlled drug sales within this area by prohibiting and preventing non-members, outsiders, and rival drug dealers from distributing narcotics in the area controlled by the Enterprise.

     Beach members explicitly acknowledged their group affiliation by, among other things, creating and placing on social media sites such as Facebook, Instagram, and YouTube, photographs and rap videos that celebrated the Enterprise's illegal activities. The postings included references to drug sales, gun possession, shootings, "BBM" or "Beach By Mansion," and "Beach" generally. The most prominent promoter of the gang through this medium was Norman Edwards, who posted a number of rap videos glorifying the crew's violence.

At various points between approximately 2008 and 2017, Beach became engaged in violent disputes with other drug dealers and crews in the area. These included intermittent rivalries with members of a nearby gang from Taylor Avenue, known as "Taylor" or "Bugatti Boys," and with members of another nearby gang from Leland Avenue, known as "Leland" or "Paper Ave." The close proximity between Beach Avenue, Taylor Avenue, and Leland Avenue – the three streets run parallel to each other and are each separated by one block – contributed to the bouts of violent rivalry among the three gangs. Throughout those disputes, members of Beach, Taylor, and Leland committed shootings and other acts of violence to protect their respective territories, to protect their narcotics and narcotics proceeds, and to intimidate rival gang members. In order to protect their turf, as well as their drugs and drug proceeds, Beach members possessed and carried firearms.

In or around 2008 and 2009, members of the Beach Avenue Crew sold crack cocaine with members of the Taylor Avenue Crew and shared territory with members of Taylor. Eventually, however, certain Beach members – in particular Lessage Jean Baptiste – became dissatisfied with their arrangement with Taylor and began obtaining crack cocaine from suppliers outside of Taylor and selling outside of their scheduled shifts on Taylor. This behavior led to a rift between certain members of Beach and Taylor, resulting in a cycle of retaliatory acts of violence by members of both crews. Members of Taylor physically attacked and shot at members of Beach, including Jean Baptiste. In response, Jean Baptiste both endorsed and engaged in violent acts. In particular, he assaulted two Taylor members on two separate occasions—cutting one with a blade and beading the other with a wooden board with nails protruding from it. Additionally, on at least one occasion a member of Beach fired gunshots out of Jean Batiste's car at Taylor members. This conflict largely marked the beginning of the Beach Avenue Crew, and caused its older member and leader, Lessage Jean Baptiste, to break away from the Taylor Avenue Crew and begin supplying his own crew on Beach Avenue.

At some point a few years after the split, the Beach Avenue Crew eventually reached a tentative truce with the Taylor Avenue Crew. Although Taylor and Leland were engaged in a violent rivalry with each other over several of these years, Beach did not engage in conflict with Leland until in or around 2014 when a member of the Leland Avenue Crew shot a Jammal Lindo, grazing him in the head with a bullet, while aiming at a member of the Taylor Avenue Crew. This incident heightened tensions between Beach and Leland and led to additional acts of violence between the two gangs. Most notably, on May 5, 2015, Ali Hamilton attempted to shoot at a Leland member in broad daylight on a public street. Hamilton missed his intended target and struck an innocent bystander in the head with a bullet. By some miracle, the victim survived his injuries.

In addition to rivalries with these neighboring crews, Beach members also responded with threats and even violence when outsiders attempted to sell drugs in Beach territory. Of particular note, in or around 2015, a rival drug dealer ("Dealer-1") moved into the area and began selling narcotics out of his home. At first, Beach members responded with verbal threats making clear that Dealer-1 was not permitted to conduct drug sales in the crew's turf. When Dealer-1 continued making sales in the crew's territory, Beach responded with violence. On August 2, 2016, a large group of Beach members, including Jammal Lindo, Jaleel Baron, and Lessage Jean Baptiste, decided to track down and shoot Dealer-1. The group found Dealer-1 outside on the street, at which point Lindo opened fire while the rest of the group, including

Baron and Jean Baptiste surrounded the area both to cut off lines of escape for Dealer-1 and to look out for law enforcement. Lindo missed Dealer-1 but struck one of Dealer-1's friends who was standing nearby. The victim survived his injuries.

## II.     Relative Culpability of the Eight Defendants

As set forth below, the Government believes that the eight defendants in this case fall into the following order of culpability in light of the facts and evidence currently known to the Government: Maurice Simmons and Kyle Mullings are the two least culpable charged members of Beach because they primarily sold crack cocaine as street dealers in the crew's territory and were not personally involved in violence or the promotion of the gang. Norman Edwards is somewhat more culpable than the first two because in addition to selling crack, he possessed a firearm as part of his crew membership and proudly promoted the gang through a number of social media posts and videos that bragged about the crew's drug dealing, gun possession, and violence. Jaleel Baron is more culpable than the first three because beyond selling crack, Baron also possessed a firearm, and participated at a lookout and backup for a gang-related shooting. David Buckhanon is about as culpable as Baron because he was one of the more prolific drug dealers, supplying crack to the younger members of the crew, and possessed a firearm. Jammal Lindo is more culpable than the preceding five defendants because he not only sold crack and possessed a firearm, but he also shot a gun at a rival dealer in furtherance of the gang and injured a victim as a result. Lessage Jean Baptiste is the second most culpable defendant in this case because as one of the oldest Beach members, he acted as a leader who supplied the younger crew members with crack, he possessed a gun, he personally participated in violence, and he encouraged others to do the same. Finally, the Government believes that Ali Hamilton is the most culpable defendant because in addition to selling crack and carrying a gun, Hamilton carried out the most egregious act of violence committed by this crew and continued to engage in violence and possess a firearm even after nearly killing an innocent civilian.

### a.     Maurice Simmons

On August 24, 2018, Simmons pled guilty to Count 1 (racketeering conspiracy) and Count 6 (narcotics conspiracy) of Superseding Indictment S3 pursuant to a plea agreement, which included a Stipulated Guidelines Range of 78 to 97 months' imprisonment. PSR at ¶¶ 13-14. The Probation Department calculated the same Guidelines Range and recommended a sentence of 78 months' imprisonment. PSR at pg. 24.

Of the eight charged defendants, the Government views Simmons and Kyle Mullings as the least culpable. Simmons was a street level crack dealer in the Beach Crew who sold crack cocaine to end users around Beach Avenue for several years until he was arrested in 2017. *See* PSR at ¶ 31. Simmons, like most street level dealers who were permitted to sell in the crew's territory, would sell $10 bags of crack cocaine (often referred to as "dime bags") to users.[1] Although Simmons sold these drugs for years and took advantage of the protection of selling in a territory protected by violent gang members who carried guns, Simmons himself did not participate in violence.

---

[1]     Dime bags typically contain enough crack cocaine for a single use.

### b. Kyle Mullings

On September 6, 2018, Mullings pled guilty to Count 1 (racketeering conspiracy) and Count 6 (narcotics conspiracy) of Superseding Indictment S3 pursuant to a plea agreement, which included a Stipulated Guidelines Range of 87 to 108 months' imprisonment. PSR at ¶¶ 13-14. The Probation Department calculated the same Guidelines Range and recommended a sentence of 87 months' imprisonment. PSR at pg. 24.

Mullings, like Simmons, was a street level crack dealer in the Beach Avenue Crew who sold crack cocaine to end users around Beach Avenue for several years until he was arrested in 2017. *See* PSR at ¶ 32. Also like Simmons, Mullings availed himself of the benefits of an alliance with violent gang members whose blessing offered a certain level of security in Mullings's years of drug dealing. However, the Government is not in a position to suggest that Mulling participated in violence himself. Accordingly, he falls into the same category as Simmons.

### c. Norman Edwards

On July 11, 2018, Edwards pled guilty to Count 1 (racketeering conspiracy) and Count 4 (narcotics conspiracy) to Superseding Indictment S2 pursuant to a plea agreement, which included a Stipulated Guidelines Range of 108 to 135 months' imprisonment. PSR at ¶¶ 10-11. The Probation Department calculated the same Guidelines Range and recommended a sentence of 84 months' imprisonment. PSR at pg. 20.

The Government views Edwards as more culpable than Simmons and Mullings, but less culpable than the other five defendants in this case. Like Simmons and Mullings, Edwards sold crack with the protection of the crew for many months during the charged conspiracy. Making him slightly more culpable are both his possession of a firearm and his role in promoting the gang's standing through social media posts. Edwards achieved local notoriety for the Beach Avenue Crew in the Bronx through his rap videos. In many of Edwards' rap songs, he glorified the Beach Avenue Crew, their narcotics dealing, and willingness to commit acts of violence against rivals. PSR at ¶ 25. Some of Edwards' rap songs were featured on YouTube, and sometimes included other Beach Avenue Crew members, and the lyrics bragged about the money the gang made selling drugs, warned rivals that they had guns and were prepared to shoot those guns, and warned witnesses not to "snitch." *Id.* In some of these videos, Edwards and others possessed firearms and displayed large amounts of cash, which are believed to be narcotics proceeds. *Id.* In at least two of the videos, Edwards appeared to fire a gun on camera. *Id.* Accordingly, although Edwards did not hold a leadership role, he brought notoriety and respect to the gang through these postings.

### d. Jaleel Baron

On September 6, 2018, Baron pled guilty to Count 5 (discharging a firearm, and aiding and abetting the same, in furtherance of a crime of violence) of Superseding Indictment S3 pursuant to a plea agreement, which included a Stipulated Guidelines Range of 120 months' imprisonment. PSR at ¶¶ 13-14. The Probation Department calculated the same Guidelines Range and recommended a sentence of 120 months' imprisonment. PSR at pg. 21

Baron was a street-level crack dealer in the Beach Avenue Crew. Although Baron did not have a leadership role in the Enterprise, he was a close associate of Lessage Jean Baptiste. The Government's evidence showed that Baron was a more prolific crack dealer than Simmons, Mullings, and Edwards. At times throughout the conspiracy, Baron possessed firearms to protect the Enterprise's drug territory from rivals. Baron also expressly discouraged outsiders who were not part of the Enterprise from selling drugs in the neighborhood. PSR at ¶ 29.

One outsider, referred to above as Dealer-1, began selling drugs in the neighborhood in 2015 and 2016. *Id.* In response, members of the Beach Avenue Crew planned to confront Dealer-1 and shoot him. *Id.* On August 2, 2016, Baron accompanied other Beach members, including Lindo and Jean Baptiste, to shoot Dealer-1. Baron knew in advance that Lindo would be carrying a gun to shoot at the rival, and Baron's role was to act as a lookout and ensure that the rival could not escape. *Id.* The Beach Avenue Crew members confronted this rival near the intersection of Archer Street and Taylor Avenue in the Bronx, where Lindo opened fire while Baron and others acted as backup and lookouts. Lindo did not strike Dealer-1 but did hit one of Dealer-1's friends in the arm, who sustained injury as a result. *Id.*

### e. David Buckhanon

On October 10, 2018, Buckhanon pled guilty to Count 1 of a Superseding Information charging him with participating in a narcotics conspiracy pursuant to a plea agreement, which included a Stipulated Guidelines Range of 121 to 151 months' imprisonment. PSR at ¶¶ 3-4. The Probation Department calculated the same Guidelines Range and recommended a sentence of 120 months' imprisonment. PSR at pg. 25.

The Government views Buckhanon as a prolific crack dealer in the Beach Avenue Crew, selling more crack on a nearly daily basis than all of his co-defendants (with the exception of Lessage Jean Baptiste) and supplying other crew members with crack. Buckhanon also regularly possessed firearms to protect the Beach Avenue Crew's drug territory. PSR at ¶ 21. Of the eight defendants, with respect to narcotics trafficking, the Government views Buckhanon and Lessage Jean Baptiste as the most culpable. However, factoring in provable acts of violence, the Government views Jammal Lindo and Ali Hamilton as more culpable than Buckhanon based on the specific acts of violence committed by Lindo and Hamilton.

### f. Jammal Lindo

On September 20, 2018, Lindo pled guilty to Count 1 (racketeering conspiracy), Count 4 (violent crime in aid of racketeering), and Count 6 (narcotics conspiracy) of Superseding Indictment S3 pursuant to a plea agreement, which included a Stipulated Guidelines Range of 135 to 168 months' imprisonment. PSR at ¶¶ 13-14. The Probation Department calculated the same Guidelines Range and recommended a sentence of 135 months' imprisonment. PSR at pg. 28.

Lindo was a street level crack cocaine dealer in the Beach Avenue Crew and carried a firearm to protect the Enterprise's drug territory from rival gangs. Lindo acted as an enforcer – i.e., someone who was willing to commit acts of violence to protect the Enterprise's territory and/or retaliate if necessary – in the Beach Avenue Crew. On August 2, 2016, Lindo attempted

to kill another drug dealer, referred to above as Dealer-1, who had been selling crack in the Enterprise's territory for more than a year. *See* PSR at ¶ 29. Lindo, accompanied by Baron and Jean Baptiste for backup, confronted Dealer-1 near the intersection of Archer Street and Taylor Avenue in the Bronx. Lindo opened fire in an attempt to kill the Dealer-1, missing his intended target but instead shooting the rival's friend in the arm. *Id.*

### g. Lessage Jean Baptiste

On October 19, 2018, Baptiste pled guilty to Count 6 (narcotics conspiracy) of Superseding Indictment S3 pursuant to a plea agreement, which included a Stipulated Guidelines Range of 151 to 188 months' imprisonment. PSR at ¶¶ 13-14. The Probation Department calculated the same Guidelines Range and recommended a sentence of 151 months' imprisonment. PSR at pg. 26.

The Government views Baptiste as the second most culpable defendant charged in this case. But for Hamilton's shooting of an innocent civilian in the head in May 2015, the Government would view Baptiste as the most culpable member of the Beach Avenue Crew. Baptiste was a leader of the Beach Avenue Crew, who supplied crack cocaine to younger members of the crew. PSR at ¶ 35. Before forming the Beach Avenue Crew, Baptiste sold crack with members of a nearby crew known as the Taylor Avenue Crew, which sold crack on Taylor Avenue, one block down from Beach Avenue. *Id.* In 2008 and 2009, however, Baptiste became involved in a rivalry with members of the Taylor Avenue Crew. *Id.* Among other things, during this time, Baptiste carried a gun with him, got into two fights during which he assaulted members of the Taylor Avenue Crew, and allowed another member of the Beach Avenue Crew to shoot at members of the Taylor Avenue Crew from Baptiste's car. *Id.*

As a result of this rivalry, Baptiste broke off to lead crack sales on Beach Avenue, where he cooked powder cocaine into crack, packaged crack for resale in drug users' apartments, sold crack himself, and supplied younger Beach Avenue Crew members, including Baron, Buckhanon, Hamilton, Mullings, and Simmons, with crack for them to resell. *Id.* Along with other members of the Beach Avenue Crew, Baptiste also discouraged outsiders who were not part of the crew from selling drugs in the neighborhood. *Id.* Baptiste disputed many of these facts in his objections to the PSR. The Government filed a response to Baptiste's objections to the PSR on January 10, 2019. *See* ECF No. 311. In that letter, the Government set forth the anticipated testimony of two cooperating witnesses should the Court believe a *Fatico* is necessary. *Id.*

### h. Ali Hamilton

On October 22, 2018, Hamilton pled guilty to Count 1 (racketeering conspiracy), Count 2 (attempted murder in furtherance of a racketeering conspiracy), Count 3 (discharge of a firearm in furtherance of a crime of violence), and Count 6 (narcotics conspiracy) of Superseding Indictment S3 pursuant to a plea agreement, which included a Stipulated Guidelines Range of 255 to 288 months' imprisonment. PSR at ¶¶ 13-14. The Probation Department calculated the same Guidelines Range and recommended a sentence of 216 months' imprisonment. PSR at pg. 26.

Hamilton was a member of the Beach Avenue Crew who sold crack, carried firearms, and engaged in at least one shooting. The Government views Ali Hamilton as the most culpable relative to his co-defendants because of the May 5, 2015 shooting that Hamilton committed where an innocent bystander was shot in the head. As a younger member of the Beach Avenue Crew, Hamilton's gang-related activities began later in the conspiracy, around 2012, and lasted until his arrest in October 2015. PSR at ¶ 34. During that time, Hamilton regularly sold crack with other members of the crew and regularly carried a firearm on his person. *Id.* In the summer of 2014, Hamilton, was arrested for making a crack sale to a local drug user. *Id.* Following this arrest, Hamilton, attempted to intimidate the drug user in order to deter the drug user from cooperating with law enforcement. *Id.* Specifically, Hamilton told the drug user, "you better keep your mouth shut, I know where your daughter goes to school," which terrified the drug user. *Id.*

Beginning in 2014, when the Beach Avenue Crew became embroiled in a rivalry with the nearby Leland Avenue Crew, Hamilton actively sought out members of the Leland Avenue Crew to shoot. *Id.* at ¶ 36. On May 5, 2015, in broad daylight, Hamilton tracked down a member of the Leland Avenue Crew who was standing on the sidewalk with several other people. *Id.* Also on the street that day was a man who was putting up flyers for his employer and who had no gang affiliation (the "Victim"). *Id.* Hamilton walked along the sidewalk across the street from the rival and then opened fire. *Id.* Although Hamilton missed the rival, one of his bullets struck the Victim in the head. *Id.* The Victim survived, though he suffered serious medical complications as a result of the shooting. *Id.*

Shortly after that shooting, Hamilton was arrested on state charges. *Id.* While detained on Riker's Island, Hamilton engaged in a fight with a different member of the Leland Avenue Crew who was also detained on state charges. *Id.* During the fight, Hamilton hit and stomped on the Leland Avenue Crew member. *Id.* Hamilton later bragged about the assault on recorded jail calls to Lindo and Baron. *Id.* Following his release from state custody, Hamilton continued selling crack and possessing firearms. *Id.* On October 31, 2015, he was caught by the police in possession of a Raven Arms .25 caliber pistol in Beach Avenue Crew territory. *Id.*

**III.    Conclusion**

For all the foregoing reasons, the Government submits that the defendants' culpability, from least to greatest, in this case is as follows: Simmons and Mullings, followed by Edwards, Baron, Buckhanon, Lindo, Baptiste, and then Hamilton.

    Respectfully submitted,

    GEOFFREY S. BERMAN
    United States Attorney

By: __/s/_____
    Maurene Comey
    Karin Portlock
    Jacob Warren
    Assistant United States Attorneys
    Southern District of New York
    (212) 637-2324 / 1589 / 2264

cc:    All Counsel of Record (by ECF)