UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES,

                Plaintiff,

    v.

LESSAGE JEAN BAPTISTE,

                Defendant.

15-CR-854 (SHS)

OPINION & ORDER

---

SIDNEY H. STEIN, U.S. District Judge.

Lessage Jean Baptiste was a leader of the Beach Avenue Crew, a violent gang which distributed narcotics in the Bronx. Jean Baptiste supplied crack to younger members in the gang and sold at least 280 grams of crack between 2008 and 2017. (PSR ¶ 35.) He also carried a gun and distributed marijuana and heroin. (*Id*.) He previously entered a plea of guilty before this Court on October 19, 2018, which the Court accepted after a full and complete allocution. Jean Baptiste asks the Court to permit him to withdraw his guilty plea. He contends that his plea was not knowingly and voluntarily entered. For the reasons set forth below, that motion is denied.

## I. BACKGROUND

On October 19, 2018, Jean Baptiste, represented by counsel, entered a guilty plea to Count Six (Narcotics Conspiracy) of the indictment pursuant to a plea agreement he had entered into with the government. (*See* Tr. at 10, ECF No. 300.) The plea agreement provided that Jean Baptiste was in criminal history category IV and that the base offense level was 30 because he was involved in the distribution of between 280 and 840 grams of crack cocaine. (PSR ¶ 14.) Two levels were added to Jean Baptiste's offense level pursuant to U.S.S.G. § 2D1.1(b)(1) because he possessed a firearm in connection with the offense. (*Id*.) Two additional points were added pursuant to U.S.S.G. § 3B1.1(c) because Jean Baptiste was a leader of the criminal activity. (*Id*.) The stipulated guidelines range under the plea agreement was 151 to 188 months' imprisonment. (*Id*.)

On March 19, 2019, the Court received a letter from Jean Baptiste requesting new counsel and a Fatico hearing. (ECF No. 339.) The Court then relieved Matthew Myers, Jean Baptiste's attorney at the time, and appointed CJA counsel Bradley Henry to represent him pursuant to the Criminal Justice Act. (ECF No. 341.) On September 13, 2019, Henry submitted a letter

motion on behalf of Jean Baptiste requesting the Court to permit him to withdraw his previously entered guilty plea. (ECF No. 418.) That motion was made by Henry at defendant's request and was "contrary to the advice of counsel." (ECF No. 418 at 2.) Four days later, Jean Baptiste submitted a *pro se* letter to the Court requesting to proceed *pro se* and to withdraw his previously entered guilty plea. (ECF No. 421.)

The Court held a status conference on October 11, 2019, at which Jean Baptiste decided to continue with Henry as counsel. (Tr. 15:8-10, ECF No. 449.) The Court denied Jean Baptiste's *pro se* motion to withdraw his guilty plea but permitted him to file a supplement to his counsel's pending motion for the same relief. (*See* Tr. 15:8-13, ECF No. 449; Order, ECF No. 448), which he did in October 2019.[1] (ECF No. 438.)

Despite Jean Baptiste's recently filed motion to withdraw his guilty plea, the government asked the Court to proceed to the sentencing phase of the case. (ECF No. 440.) The Court noted that the government's letter did not address any of the issues raised in Jean Baptiste's *pro se* supplement. (ECF No. 448.) The Court ordered that the government could file a response to Jean Baptiste's supplement by November 25, 2019. (ECF No. 448.) The Court encouraged the government to obtain an affidavit from Matthew Myers, Jean Baptiste's former counsel, addressing Jean Baptiste's allegations that (1) Jean Baptiste only had 24 hours to respond to the plea agreement; (2) Myers wrote a note to Jean Baptiste during the plea allocution to "deter" him from speaking to the Court, and (3) Myers directed Jean Baptiste to answer in the affirmative to each of the Court's questions before he heard them. (*Id.*)

The government formally responded to Jean Baptiste's supplement on January 6, 2020. (ECF No. 461.) In its submission, the government attached an affidavit from Matthew Myers. (*See* ECF No. 461, Ex. A.)

## II. DISCUSSION

### A. Legal Standard

A plea may be withdrawn only if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "A defendant who seeks to withdraw his plea bears the burden of satisfying the trial judge that there are valid grounds for withdrawal, taking into account any prejudice to the government." *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992) (internal quotation marks and quotations omitted). "The standard for withdrawing a guilty plea is stringent because society has a

---

[1] Jean Baptiste filed further supplements in January 2020 and September 2020. (ECF Nos. 462, 476.)

strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice." *United States v. Rose*, 891 F.3d 82, 85 (2d Cir. 2018) (internal quotation marks omitted) (quoting *United States v. Schmidt*, 373 F.3d 100, 103 (2d Cir. 2004)).

To determine whether a defendant has met his burden, a court should consider, *inter alia*: "(1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); and (3) whether the government would be prejudiced by a withdrawal of the plea." *Schmidt*, 373 F.3d at 102–03. The district court can also rely on a defendant's in-court sworn statements that he "understood the consequences of his plea, had discussed the plea with his attorney, [and] knew that he could not withdraw the plea." *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001).

### B. Jean Baptiste's Contentions

Jean Baptiste recounts that he and his prior counsel, Matthew Myers, began having communication issues in May 2017. (ECF No. 418 at 1.) On June 1, 2017, Judge Laura Taylor Swain—the judge formerly presiding over this action—denied Jean Baptiste's request to remove Myers. After the action was assigned to this Court in 2019, Jean Baptiste again requested a new attorney. (ECF No. 339.) The Court granted that motion and appointed Bradley Henry pursuant to the Criminal Justice Act. (ECF No. 341.)

Henry, on behalf of Jean Baptiste, claims that "[w]hile the Court appropriately had hearings to discuss the issues of difficult communication, [Jean Baptiste] maintains that the discussions between he and prior counsel were not appropriate to adequately advise him of the terms and conditions of the Plea Agreement and/or the facts and defenses available in his case." (ECF No. 418 at 1-2.) Moreover, Jean Baptiste complains that he did not have time to reasonably consider the plea (24 hours); and that he instructed his attorney that he did not want a plea with a gun enhancement. (ECF No. 418 at 2.) Allegedly, when Jean Baptiste attempted to raise his discomfort about stipulating to the gun enhancement at the plea allocution, Myers wrote a note to Jean Baptiste discouraging it. (ECF No. 438 at 1.) Jean Baptiste alleges that he was ultimately misled by AUSA Jacob Warren, as well as his counsel, Matthew Myers. (*Id.*) Overall, he "states he did not understand the terms of the Plea Agreement, was not able to appreciate the advice of counsel regarding the facts and potential defenses in his case and asserts his innocence as to each count of the Indictment." (ECF No.

418.) The government, on the other hand, "believes that defendant Jean Baptiste knowingly made false assertions in [his submissions] in an effort to persuade the Court to allow him to withdraw his guilty plea." (ECF No. 461 at 1.)

## C. Jean Baptiste Has Failed to Meet the Stringent Standard Governing Plea Withdrawals

### 1. *Voluntariness*

Jean Baptiste first argues that his plea was not knowingly and voluntarily entered. (*See* ECF No. 418 at 1.) "Where a defendant disputes the voluntariness of his guilty plea, he 'must raise a significant question about the voluntariness of the original plea' to support withdrawal." *United States v. McCutcheon*, 765 F. App'x 507, 513 (2d Cir. 2019) (quoting *United States v. Doe*, 537 F.3d 204, 211 (2d Cir. 2008)). A plea is voluntary if it is "not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." *United States v. Gil-Guerrero*, 759 F. App'x 12, 17 (2d Cir. 2018) (internal quotation marks omitted) (quoting *United States v. Juncal*, 245 F.3d 166, 172 (2d Cir. 2001)). "[S]worn testimony given during a plea colloquy 'carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made.'" *United States v. Rivernider*, 828 F.3d 91, 105 (2d Cir. 2016) (quoting *Juncal*, 245 F.3d at 171).

Here, the plea transcript and the totality of the surrounding circumstances dictate that Jean Baptiste's plea was knowing and voluntary. At the plea proceeding, the Court placed Jean Baptiste under oath and questioned him thoroughly about his competence to plead guilty. (Tr. at 4:10-6:18, ECF No. 300.) Among other affirmations, Jean Baptiste indicated that he had had a complete opportunity to discuss his case with Myers and to discuss the consequences of entering a guilty plea. (*Id.* at 6:8-11.) Based on his responses and the Court's observations of his demeanor, the Court found him fully competent to enter a plea. (*Id.* at 6:18.) In the course of the proceeding, the Court explained to Jean Baptiste each of the constitutional rights that he would be giving up upon entering a plea of guilty and reminded him that he was not required to plead guilty and that he could change his mind for any reason whatsoever. (*Id.* at 7:9-9:9.)

The Court also explained the charge in Count Six of the Superseding Indictment to which Jean Baptiste was pleading guilty pursuant to the plea agreement. (*Id.* at 9:10-11:2.) The Court informed Jean Baptiste about, *inter alia*, the maximum punishment of life imprisonment and the mandatory minimum sentence of ten years. (*Id.* at 11:3-12:18.) The Court explained the

procedure it would use to determine a fair and appropriate sentence and notified him that no promises could be made with respect to the sentence that the Court would impose. (*Id.* at 13:4-15:9.) The Court then walked through the plea agreement with Jean Baptiste, who confirmed that he had read the plea agreement and had discussed it with Myers. (*Id.* at 15:10-16:4.) He also confirmed that he understood the agreement, that everything about his plea and sentence was contained in the agreement, and that he had entered the plea agreement knowingly and voluntarily. (*Id.* at 16:5-13.) Jean Baptiste confirmed that no promises, inducements, or threats had been made to him. (*Id.* at 16:14-20.) At the end of the proceeding, he set forth what he had done to commit the offense to which he was pleading guilty and affirmed that he was pleading guilty voluntarily and of his own free will. (*Id.* at 17:23-20:16.) The Court affords significant weight to these statements in accordance with the "strong presumption of accuracy" given to a defendant's statements made under oath during a plea allocution. *Juncal,* 245 F.3d at 171 (2d Cir. 2001).

Myers' affidavit also directly refutes defendant's contention that his plea was involuntary. Regarding Jean Baptiste's contention that Myers directed him to answer in the affirmative to each of the Court's questions before he heard them, Myers claims that he "instructed Mr. Baptiste during his numerous counsel visits at the MDC as well as in court to give clear unequivocal answers to the waiver of rights section of the allocution as well as the factual admission section by the court." (ECF No. 461, Ex. A ¶ 3.) Further, Myers alleges that he "instructed Mr. Baptiste that he must answer 'yes or no' to many of the questions otherwise the court cannot accept his plea." (*Id.*) Myers noted that "[s]everal days before the allocution at his counsel visit concerning what would be discussed on the date of his plea Mr. Baptiste was taken through the exact waiver of rights questions with the defendant" and "Mr. Baptiste understood each right and answered that he not only understood each right but was willing to waive each right." (*Id.*) He avers that Jean Baptiste "factually admitted to the narcotics charges in the indictment and stated in no uncertain terms he understood the guidelines including all potential enhancements." (*Id.*)

Considering Jean Baptiste's statements at the plea allocution in conjunction with Myers' affidavit, the Court finds that Jean Baptiste's plea was voluntarily made.

### 2. *Legal Innocence*

The factors set forth by the Second Circuit in *Schmidt* also support a denial of Jean Baptiste's motion. In order to determine whether the defendant has shown a "fair and just reason" to justify withdrawal, a district court considers a post-plea assertion of innocence. *Schmidt,* 373 F.3d at 102. "[C]onclusory assertions of legal innocence are insufficient to

support [a defendant's] motion to withdraw his guilty plea." *United States v. Valdez*, 522 F. App'x 25, 30 (2d Cir. 2013) (citations omitted). Thus, "a defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997). For instance, in *United States v. Harper*, the Second Circuit found that the district court was not required to construe defendant's pro se letter claiming that he "never possessed" a firearm as a *pro se* motion to withdraw his guilty plea, since that assertion was "unsupported by evidence sufficient to overcome [the defendant's] earlier sworn admission of guilt." 737 F. App'x 17, 23 (2d Cir. 2018).

Here, Jean Baptiste "asserts that he was unaware of certain defenses that are potentially available to him in this case." (ECF No. 418 at 2.) He "asserts his innocence as to the counts in the Indictment" and "believes he may assert his innocence at trial and, if successful, benefit from a reduced sentence." (*Id.*) However, as discussed above, this assertion of legal innocence flatly contradicts Jean Baptiste's statements at the plea allocution—where he admitted to and explained his conduct. His lawyer stated on the record that he was not aware of any valid defense that would prevail at trial and that in his view, there was an adequate factual basis to support Jean Baptiste's plea. (Tr. at 17:13-19, ECF No. 300.) Because Jean Baptiste has set forth no facts to support his claim of legal innocence, the Court rejects that claim.

### 3. *Time*

In analyzing the second *Schmidt* factor, the Court must consider "the amount of time that has elapsed between the plea and the motion." *Schmidt*, 373 F.3d at 102. "[T]he longer the elapsed time, the less likely withdrawal would be fair and just," *id.*, since "[a] long interval between the plea and the request often weakens any claim that the plea was entered in confusion or under false pretenses." *United States v. Doyle*, 981 F.2d 591, 595 (1st Cir. 1992) (citations omitted).

Here, Jean Baptiste concedes that he made his motion to withdraw his plea eleven months after entering his guilty plea. (*See* ECF No. 418 at 2.) While Jean Baptiste alleges that he "began asking to withdraw his plea prior to his former counsel being relieved – only a few weeks after the plea," (*id.*), as the government notes, Jean Baptiste—decidedly no stranger to *pro se* motions—"could have filed a *pro se* motion at any time and failed to do so." (ECF No. 424 at 5; *see also Doyle*, 981 F.2d at 595 ("While an immediate change of heart may well lend considerable force to a plea withdrawal request, a long interval between the plea and the request often weakens any claim that the plea was entered in confusion or under false pretenses.").

Moreover, courts in the Second Circuit have denied defendants' withdrawal motions in cases with time frames similar to this case. *See, e.g., McCutcheon*, 765 F. App'x at 513 (2d Cir. 2019) (affirming district court's denial of motion to withdraw plea where defendant waited roughly three months to move to withdraw it); *United States. v. Obiorah*, 536 F. App'x 53, 55 (2d Cir. 2013) (eight months); *U.S. v. Bishop*, 541 F. App'x 65, 67 (2d Cir. 2013) (thirteen months); *United States v. Carreto*, 583 F.3d 152, 157 (2d Cir. 2009) (one year).

### 4. *Prejudice*

Last, granting Jean Baptiste's motion to withdraw his guilty plea would prejudice the government. *See Schmidt*, 373 F.3d at 102-103. " 'Prejudice' in the context of plea withdrawal typically refers to depriving the Government of the benefit of its bargain by having the burden of trial preparation suddenly thrust upon it, as well as the potential difficulty to the Government in securing evidence against the defendant that would have been easier to secure at an earlier moment in time." *United States v. Lopez*, 385 F.3d 245, 254 (2d Cir. 2004).

Jean Baptiste, who concedes that the "government may have to bear the burden and expense of trial if the motion is granted," cites *United States v. Valdez*, 362 F. 3d 903, 913 (6th Cir. 2004) for the proposition that "[c]ourts have found that preparing for and conducting trial is not prejudicial to the government." (ECF No. 418 at 2; ECF No. 438 at 5.) But unlike the circumstances in *Valdez*, which involved a mere 75-day delay between the defendant's guilty plea and motion to withdraw, in this case, there has been a substantial delay—eleven months—between Jean Baptiste's guilty plea and the instant motion. (*See* ECF No. 418 at 2.) In the year since Jean Baptiste entered his guilty plea, "the Government advised its witnesses that the case against the defendant was resolved and that there would be no trial." (ECF No. 424 at 6.) This Circuit has found that these circumstances constitute prejudice. *See United States v. Carreto*, 583 F.3d 152, 157 (2d Cir. 2009) (explaining that "the Government would have been prejudiced by a withdrawal of the guilty pleas, as the Government surely would have encountered difficulties were it required to re-assemble its evidence after more than a year's delay").

**III. CONCLUSION**

Because the Court finds Jean Baptiste's plea was knowingly and voluntarily made, and because the *Schmidt* factors weigh against withdrawal, Jean Baptiste's motion to withdraw his guilty plea is denied.

Dated:  New York, New York
        July 14, 2021

SO ORDERED:

Sidney H. Stein, U.S.D.J.

8