

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 10, 2022

**BY ECF**
The Honorable Sidney H. Stein
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Lessage Jean Baptiste*, S5 15 Cr. 854 (SHS)

Dear Judge Stein:

      The Government respectfully submits this letter in advance of the sentencing of defendant Lessage Jean Baptiste, currently scheduled for August 16, 2022. On October 19, 2018, Baptiste pled guilty pursuant to a plea agreement, to participating in a narcotics conspiracy from 2008 through February 2017, wherein he distributed and possessed with intent to distribute 280 grams and more of cocaine base, a detectable amount of heroin, and a detectable amount of marijuana. Pursuant to the plea agreement, the parties stipulated that the defendant's total offense level was 31 and his criminal history category was IV, resulting in a sentencing range under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") of 151 to 188 months' imprisonment, with a mandatory minimum sentence of 120 months' imprisonment (the "Stipulated Guidelines Range"). The Probation Department calculated the same Guidelines Range (PSR ¶ 106) and recommends a sentence of 151 months' imprisonment. PSR at 27.

      As the Court is aware, Baptiste raised several challenges to the Presentence Investigation Report (the "PSR"), including to the calculation of the Stipulated Guidelines Range, as well as the description of violent conduct he participated in while a member of the charged narcotics conspiracy. (Doc. 530). In doing so, the defendant breached his plea agreement with the Government by seeking a different Guidelines calculation than the stipulated calculation contained in the agreement. On June 1, 2022, the Court held a *Fatico* hearing to resolve the factual disputes, during which, as described below, Baptiste lied under oath. Because those lies covered material matters at the heart of the *Fatico* hearing, the defendant obstructed justice through his testimony and a two-level enhancement for obstruction of justice is therefore appropriate under U.S.S.G. § 3C1.1. Because he obstructed justice, Baptiste is also no longer entitled to an offense level reduction for acceptance of responsibility. *See* U.S.S.G. § 3E1.1, Application Note 4 ("Conduct resulting in an enhancement under 3C1.1 (Obstruction or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct."). The Government therefore submits that the appropriate offense level is 36, resulting in a Guidelines Range of 262 to 327 months' imprisonment (the "Revised Guidelines Range").

For the reasons set forth below, the Government respectfully submits that a sentence within the Revised Guidelines Range of 262 to 327 months' imprisonment would be fair and appropriate in this case. In particular, the seriousness of the defendant's offense conduct as a leader of a violent drug crew, the defendant's criminal history, the defendant's false testimony at the *Fatico* hearing, and the defendant's refusal to accept full responsibility for his conduct all weigh heavily in favor of a sentence within the Revised Guidelines Range.

## Background

The Government set forth a detailed factual background of this case and Baptiste's conduct in its letter dated January 27, 2019, regarding the relative culpability of the eight defendants charged in this matter (the "Relative Culpability Letter") (Doc. 326). That letter explains the history of the Beach Avenue Crew, which controlled narcotics distribution in its territory for nearly a decade and maintained that control by intimidating outsiders, possessing firearms, and engaging in acts of violence. The testimony and evidence presented at the June 1, 2022, *Fatico* hearing and the Government's subsequent letter summarizing the evidence from that hearing (Doc. 538) further detail Baptiste's conduct. Taken together, these materials describe how, for years, up until his arrest in 2017, the defendant was a leader of the Beach Avenue Crew—a violent drug organization that terrorized a community for years. In his leadership role, Baptiste supplied crack cocaine to younger members of the Crew on a daily basis, taught at least one member how to cook powder cocaine into crack, and was responsible for ensuring that only members of the Crew could sell crack in the Crew's territory. (Doc. 538 at 11; PSR ¶ 35). Overall, Baptiste was responsible for distributing at least 280 grams of crack cocaine, possessed a gun to protect the Crew's drug territory from rivals (Doc. 543 at 6), personally shot at rival drug dealers (Doc. 543 at 6-7), and engaged in other acts of violence, including stabbing one drug dealer in the head, and attacking another with a two-by-four plank with exposed nails (Doc. 543 at 7).

In addition to the above-described conduct, Baptiste also obstructed justice through his materially false testimony at the June 1, 2022 *Fatico* hearing. For example, Baptiste testified that, contrary to the testimony of both Elijah Davila and Andrea Bell, there was no such thing as the Beach Avenue Crew, and everyone in his neighborhood sold crack on their own. (Tr. 152, ("there's no crew, there's no nothing. Everybody is freelancing.")). In the Court's July 11, 2022 Findings of Fact and Conclusions of Law, the Court specifically found Baptiste's testimony not credible on this point. (Doc. 543 at 5). Baptiste also claimed that there were never guns around when he and others were selling crack cocaine and that he never possessed a gun. (Tr. 145). The Court found that this testimony was likewise not credible. (Doc. 543 at 6). Baptiste further lied repeatedly when asked about his drug supplier, claiming that he had a single supplier over many years, whose name he never learned and simply referred to as "it." (Tr. 146). As a final example, the defendant falsely claimed that he only bagged crack in the Beach Avenue Apartment "once or twice," and that it was just a coincidence that he was in the apartment on the day it was searched in January 2014, because he was "trying to use the bathroom." (Tr. 155-56). In addition to these blatant, material lies, Baptiste disclaimed his leadership role in the Beach Avenue Crew and his involvement in numerous acts of violence, which the Court again found unpersuasive in deciding that the Government met its burden of proof with respect to each of these facts. (Doc. 543).

## Applicable Law

The Guidelines are no longer mandatory, but they still provide important guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007). The Guidelines range is thus "the lodestar" that "'anchor[s]'" the district court's discretion. *Molina-Martinez* v. *United States*, 136 S. Ct. 1338, 1345-46 (2016) (quoting *Peugh* v. *United States*, 133 S. Ct. 2072, 2087 (2013)).

After making the initial Guidelines calculation, a sentencing judge must consider the factors outlined in Title 18, United States Code, Section 3553(a), and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing outlined in 18 U.S.C. § 3553(a)(2). To the extent a district court imposes a sentence outside the range recommended by the Guidelines, it must "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *United States* v. *Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *Gall*, 552 U.S. at 50).

## A Sentence Within the Stipulated Guidelines Range Is Appropriate

The Government respectfully submits that a sentence within the Updated Guidelines Range of 262 to 327 months' imprisonment is warranted in this case. In particular, the nature and circumstances of the offense, the history and characteristics of the defendant, the need to protec the public, and the need for specific deterrence all weigh in favor of a Guidelines sentence.

The seriousness of the offense weighs heavily in favor of a Guidelines sentence. Baptiste was a leader of a violent street gang whose members sold drugs and protected its territory through shootings and other acts of violence. As a leader of the Beach Avenue Crew, Baptiste actively participated in the Crew's core activities. Baptiste supplied crack cocaine to members of the Crew on a daily basis for years, taught and directed at least one member to cook powder cocaine into crack, and was responsible for organizing the location where his dealers packaged crack and for ensuring that only his dealers were selling in the Crew's territory. Baptiste's drug dealing was extensive, and he is responsible for flooding the Beach Avenue Crew's territory with more than 280 grams of crack, fueling a damaging drug epidemic. Baptiste also carried a gun to protect his Crew's territory and knew that other members of the Crew similarly kept guns nearby when selling the Crew's crack cocaine. On at least one occasion the defendant used a gun to shoot at rival drug dealers.

The defendant also participated in numerous other acts of violence, all of which targeted other individuals who were selling crack cocaine in the area. The defendant's violence fueled ongoing tensions between the various groups of drug dealers in the area and contributed to a wave of back-and-forth violence that terrorized the local community for years. On one occasion the defendant stabbed another drug dealer in the head. On another occasion, the defendant and a co-conspirator, Marvin Butler, approached a rival drug dealer outside a neighborhood convenience store. Butler pulled out a gun, threatening to shoot, and as the victim ran inside the store, the defendant beat the victim with a two-by-four plank with exposed nails.

Baptiste is more culpable than the members of the crew who exclusively sold narcotics, for obvious reasons. First, Baptiste had a leadership role in the Crew. Second, Baptiste personally possessed firearms during the course of his membership. Third, Baptiste engaged in numerous acts of violence. And fourth, unlike co-defendants who pled guilty, took full responsibility for their actions, and expressed remorse, here, after pleading guilty Baptiste obstructed justice by lying under oath about essentially all aspects of his conduct. A sentence within the Revised Guidelines Range is therefore appropriate to provide just punishment for the defendant's dangerous, violent conduct.

Baptiste's personal history and characteristics similarly support a sentence within the Revised Guidelines Range in order to achieve the objective of deterrence, protect the public, and promote respect for the law. Specifically, the defendant has five prior convictions relating to the criminal sale and/or possession of a controlled substance, at least three of which involved crack cocaine. (PSR ¶¶ 57-61). These repeated convictions for the same behavior demonstrate a concerning pattern of conduct, one in which the defendant's prior convictions and terms of imprisonment have not been sufficient to deter the defendant from returning to the same criminal activity. In fact, it appears the defendant began participating in the instant offense shortly after his release from prison in connection with his last drug-related conviction. Indeed, during the course of this conspiracy, the defendant was arrested multiple times, but still remained undeterred from continuing to act as a leader of a violent drug crew.

In addition, while in custody in connection with the instant offense the defendant engaged in at least two serious offenses. On April 27, 2020, the defendant possessed drugs or alcohol (for which he was sanctioned to 30 days' disciplinary segregation, and 90 days' loss of commissary and email privileges), and on June 27, 2020, the defendant possessed a hazardous tool (for which he was sanctioned to 40 days' disciplinary segregation, 180 days' loss of commissary, and 90 days' loss of email privileged). This course of conduct, together with the defendant's lies under oath before this Court, demonstrates that past convictions, including the current federal prosecution, have failed to deter the defendant from committing crimes. A lengthy period of incarceration is therefore necessary to protect the public from the defendant's future crimes and to deter the defendant from returning yet again to criminal activity.

As set forth in the Government's Relative Culpability Letter, the only defendant whose offense conduct was arguably more culpable than Baptiste was Ali Hamilton. The Government recognizes that Your Honor sentenced Hamilton to 180 months' imprisonment. However, Hamilton was in Criminal History Category I in connection with a one-point conviction for criminal sale of a controlled substance, accepted full responsibility for his crimes, and did not act as a leader of criminal activity. As described above, Baptiste's criminal history is extensive and involves five prior drug-related convictions. Further, the defendant's lies to this Court demonstrate a troublesome lack of remorse and heightened risk of recidivism. Accordingly, the need for incapacitation and specific deterrence are far greater with Baptiste than with Hamilton. In addition, the Government's Relative Culpability Letter was written before Baptiste obstructed justice, and thus does not take into account that additional, concerning conduct, which again raises concerns about the defendant's lack of responsibility and remorse and increased potential for recidivism. Accordingly, while a sentence within the Revised Guidelines Range would be higher than the

Hon. Sidney H. Stein
August 10, 2022
Page 5 of 6

Court has imposed for other defendants in this case, the Government submits that given the defendant's conduct and criminal history, such a sentence is warranted here.

      The defendant asks the Court to calculate the Base Offense level for the narcotics conspiracy using the drug quantity for powder cocaine as opposed to crack cocaine. As the Court is aware, and as defense counsel discusses, on June 22, 2021, the U.S. Department of Justice provided public testimony in support of the EQUAL Act, S.79. This proposed legislation would eliminate the powder-to-cocaine base sentencing disparity in 21 U.S.C. §§ 841 and 960. Although the Department supports elimination of the powder-to-cocaine base disparity, until legislation to that effect is passed, the current statutory and guidelines provisions remain in effect. In this case, the amount of cocaine base attributable to the defendant's criminal conduct is between 280 and 840 grams of crack cocaine, and the Government submits that given the testimony and evidence at the June 1, 2022 *Fatico* hearing, there is a sufficient basis to find that the offense involved 840 grams of crack cocaine. As a result, the current base offense level is 30, with two points for possession of a firearm, two points for leadership position, and two points for obstruction of justice, resulting in a total offense level of 36, and a Guidelines range of 262 to 327 months' imprisonment. If the powder cocaine Guidelines were instead applied to the same amount of cocaine base, the base offense level would be 24, and with the applicable enhancements, the total offense level would be 30, resulting in a Guidelines sentencing range of 135 to 168 months' imprisonment. The Court can and should, consistent with the law and current sentencing framework, consider the powder-to-cocaine base disparity in assessing the Section 3553(a) factors. *See Kimbrough v. United States*, 552 U.S. 85, 106-08 (2007); *United States v. Cavera*, 550 F.3d 180, 191-92 (2d Cir. 2008) (en banc). However, based on all the relevant factors under Section 3553(a) described herein, the Government believes that in this case, a Guidelines sentence of 262 to 327 months' imprisonment remains appropriate.

      The defendant engaged in multiple acts of violence, possessed a firearm to protect his drug turf, and led a violent drug crew that engulfed the community in a vicious cycle of violence. He did so after sustaining multiple prior convictions, and then he perjured himself before this Court rather than accept responsibility for his conduct. That combination of factors should drive the sentence here and warrants a substantial period of incarceration.

Hon. Sidney H. Stein
August 10, 2022
Page 6 of 6

## Conclusion

      For the reasons set forth above, the Government respectfully submits that a sentence within the Revised Guidelines Range of 262 to 327 months' imprisonment would be fair and appropriate in this case.

      Respectfully submitted,

      DAMIAN WILLIAMS
      United States Attorney

By: __/s/_____
      Courtney Heavey
      Mathew Andrews
      Maurene Comey
      Assistant United States Attorneys
      Southern District of New York
      (212) 637-2413 / 6526 / 2324

cc:    Thomas Nooter, Esq. (by ECF)